Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| IN RE:<br><br>FAT BRANDS INC. SECURITIES LITIGATION | Case No. 2:22-cv-01820-MCS-RAO<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>CLASS ACTION |
| --- | --- |

# **TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT .................................................................................1

II. OVERVIEW OF THE LITIGATION ........................................................................2

    A.  Plaintiffs' Allegations ...................................................................................2

    B.  Procedural History and Settlement ..............................................................4

III. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS .............4

    A.  The Settlement Class Satisfies Rules 23(a) .................................................5

        1.  Numerosity .........................................................................................5

        2.  Commonality .....................................................................................6

        3.  Typicality ..........................................................................................6

        4.  Adequacy ...........................................................................................7

    B.  The Settlement Class Satisfies Rule 23(b)(3) ..............................................8

        1.  Predominance ....................................................................................8

        2.  Superiority ........................................................................................9

    C.  Ascertainability ...........................................................................................10

IV. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL .........10

    A.  Plaintiffs and Lead Counsel Adequately Represented the Class .........12

    B.  The Settlement is the Product of Arm's-Length Negotiations .............13

    C.  The Relief Provided to the Class is Adequate ......................................13

        1.  The Strength of Plaintiffs' Case and the Risk, Expense,
            Complexity, and Likely Duration of Continued Litigation .........14

        2.  Risk of Maintaining Class Action Status Through Trial .............16

    D.  The Remaining Rule 23(e)(2)(C) Factors Support Approval...............16

        1.  The Methods of Distributing Relief and Processing Claims ........16

        2.  Proposed Attorneys' Fees ...............................................................17

        3.  Other Agreements ...........................................................................17

    E.  The Proposed Settlement Does Not Unjustly Favor Any
        Settlement Class Member, Including Plaintiffs.....................................18

    F.  The Remaining Ninth Circuit Factors Favor Approval.......................19

i

|       | 1. | The Amount Offered in Settlement ..............................................19 |
|       | 2. | The Extent of Discovery and Stage of Proceedings ....................21 |
|       | 3. | Experienced Counsel's Recommendations ..................................22 |
| V.    | THE COURT SHOULD APPROVE THE NOTICE PLAN........................22 |
| VI.   | THE PROPOSED SCHEDULE...................................................................24 |
| VII.  | CONCLUSION .........................................................................................25 |

ii

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ...................................................................................8, 9

*Baker v. SeaWorld Ent., Inc.*,
  No. 14CV2129-MMA (AGS), 2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ......23

*Booth v. Strategic Realty Tr., Inc.*,
  No. 13-CV-04921-JST, 2015 WL 3957746 (N.D. Cal. June 28, 2015) ..............10

*Cheng Jiangchen v. Rentech, Inc.*,
  No. CV 17-1490-GW(FFMX), 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ...17

*Christine Asia Co. v. Yun Ma*,
  No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ........18

*Eminence Cap., LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ........................................................................14

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ....................................................... 11, 12, 14, 19

*Hefler v. Wells Fargo & Co.*,
  No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .........18, 19

*Hefler v. Wells Fargo & Co.*,
  No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ..............14

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984) .................................................................19

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ....................................................................23

*In re Audioeye, Inc., Sec. Litig.*,
  No. CV-15-00163-TUC-DCB, 2017 WL 5514690 (D. Ariz. May 8, 2017) .......17

*In re China Med. Corp. Sec. Litig.*,
  No. 8:11-1061-JST (ANX), 2013 WL 12126754 (C.D. Cal. May 16, 2013)...5, 8

iii

*In re Cooper Companies Inc. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009) ..............................................................................9

*In re Heritage Bond Litig.*,
No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .................10

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019)..................................................................................10

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007).................................................................15

*In re Juniper Networks, Inc. Sec. Litig.*,
264 F.R.D. 584 (N.D. Cal. 2009).............................................................................6

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ............23

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)................................................................... 14, 17, 19

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...........................................................16, 20

*In re Regulus Therapeutics Inc. Sec. Litig.*,
No. 3:17-CV-182-BTM-RBB, 2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ....20

*In re Rent-Way Sec. Litig.*,
305 F. Supp. 2d 491 (W.D. Pa. 2003)..................................................................16

*In re Silver Wheaton Corp. Sec. Litig.*,
No. 2:15-cv-05146-CAS-JEMx, 2017 WL 2039171 (C.D. Cal. May 11, 2017) .5, 6, 7

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007).....................................................................15

*In re Wireless Facilities, Inc. Sec. Litig. II*,
253 F.R.D. 607 (S.D. Cal. 2008) .........................................................................14

*In re Zynga Inc. Sec. Litig.*,
No. 12-CV-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ........6, 8, 9

iv

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. L*iab. Litig.,
  No. 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) .................21

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
  136 F. Supp. 3d 1159 (C.D. Cal. 2015) ...............................................................7

*Middlesex Cty. Ret. Sys. v. Semtech Corp.*,
  No. 07-cv-7114-CAS-FMOx, 2010 WL 11507255 (C.D. Cal. Aug. 27, 2010) 6, 7

*Mild v. PPG Indus., Inc.*,
  No. 218CV04231RGKJEM, 2019 WL 3345714 (C.D. Cal. July 25, 2019) .......12

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) .......................................................................22

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
  238 F.R.D. 482 (C.D. Cal. 2006) ..........................................................................8

*O'Connor v. Boeing N. Am., Inc.*,
  184 F.R.D. 311 (C.D. Cal. 1998) ........................................................................10

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982)....................................................................... passim

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009)...............................................................................23

*Salazar v. Midwest Servicing Grp., Inc.*,
  No. 17-CV-0137-PSG-KS, 2018 WL 3031503 (C.D. Cal. June 4, 2018)...........15

*Satchell v. Fed. Express Corp.*,
  No. C 03 2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .......................13

*Todd v. STAAR Surgical Co.*,
  No. CV 14-5263 MWF (GJSx), 2017 WL 4877417 (C.D. Cal. Oct. 24, 2017)..13

*Turocy v. El Pollo Loco Holdings, Inc.*,
  No. 15-cv-1343-DOC-KESx, 2018 WL 3343493 (C.D. Cal. July 3, 2018)..........5

*Vikram v. First Student Mgmt., LLC*,
  No. 17-CV-04656-KAW, 2019 WL 1084169 (N.D. Cal. Mar. 7, 2019) ............19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; 2:22-cv-01820-MCS-RAO

*Vinh Nguyen v. Radient Pharms. Corp.*,
  287 F.R.D. 563 (C.D. Cal. 2012) ................................................................5

*Vinh Nguyen v. Radient Pharms. Corp.*,
  No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014)..........18

*Wong v. Arlo Techs., Inc.*,
  No. 5:19-CV-00372-BLF, 2021 WL 1531171 (N.D. Cal. Apr. 19, 2021)..........13

**Statutes**

15 U.S.C. § 78u-4(a)(7)(A)-(F) ...............................................................24

28 U.S.C. § 1715...................................................................................23

**Rules**

Fed. R. Civ. P. 23.....................................................................................5

Fed. R. Civ. P. 23(a) ..........................................................................4, 5, 9

Fed. R. Civ. P. 23(a)(2) ...........................................................................6

Fed. R. Civ. P. 23(b)(3) ......................................................................4, 8, 9

Fed. R. Civ. P. 23(e) ..............................................................................10

Fed. R. Civ. P. 23(e)(1)(B) ......................................................................11

Fed. R. Civ. P. 23(e)(2); and (ii)..........................................................11, 19

Fed. R. Civ. P. 23(e)(2)(A) ......................................................................12

Fed. R. Civ. P. 23(e)(2)(B) ......................................................................13

Fed. R. Civ. P. 23(e)(2)(C) ...................................................................13, 16

Fed. R. Civ. P. 23(e)(2)(C)(i) ...................................................................13

Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv) ............................................................16

Fed. R. Civ. P. 23(e)(2)(D) ......................................................................18

Fed. R. Civ. P. 23(e)(3); and (D)................................................................11

Fed. R. Civ. P. 23(g)(1)(A)........................................................................................7

Fed. R. Civ. P. 23(h)(1) ...........................................................................................24

vii

Lead Plaintiff Robert J. Matthews and named plaintiff Michael Melendez ("Plaintiffs") submit this memorandum in support of their Unopposed Motion for Preliminary Approval of Class Action Settlement. Plaintiffs request that the Court: (1) preliminarily certify the Settlement Class and appoint class representatives and class counsel; (2) preliminarily approve the Settlement on the terms set forth in the Stipulation of Settlement dated September 23, 2022 ("Stipulation"), filed herewith; (3) approve the proposed form and method of notice to the Settlement Class, and direct that such notice be disseminated; and (4) schedule a Settlement Hearing to consider final approval of the Settlement and related matters.[1]

## I.   PRELIMINARY STATEMENT

The Parties have reached a settlement to resolve the claims in the above-captioned securities class action ("Action") for $3,000,000 ("Settlement"). The Settlement provides a fair, reasonable, and adequate result for investors despite significant risk. Plaintiffs now seek preliminary approval of the Settlement. Preliminary approval does not require the Court to determine whether it should grant final approval of the Settlement at this point. Rather, the Court need only determine whether the Settlement is *approvable*, in that it falls within the range that the Court reasonably could approve. If the Court grants preliminary approval, Plaintiffs will provide notice to the Settlement Class, soliciting claims, objections to, and exclusions from, the Settlement. At the Settlement Hearing, with the Settlement Class Members' reactions in hand, the Court will determine whether to grant final approval of the Settlement.

The Parties engaged in arm's-length settlement discussions at a private mediation, guided by an experienced mediator. The resulting Settlement is a fair,

---

[1] All capitalized terms not otherwise defined shall have the same meanings ascribed to them in the Stipulation.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; 2:22-cv-01820-MCS-RAO

reasonable, and adequate result for the Settlement Class. Plaintiffs faced several obstacles if litigation were to continue including Defendants' anticipated motions to dismiss, the availability of proof, Defendants' potential defenses, the risks of prosecuting this litigation through trial, and the real danger that Plaintiffs would not be able to obtain a larger sum if litigation were to continue, as there were no available insurance funds and the same Defendants were facing several other competing lawsuits, investigations, and liabilities.

The Court must also preliminarily certify the Settlement Class to allow for notice to be distributed to Settlement Class Members. Certification of a settlement class is nearly automatic in securities class actions, and this case is no outlier.

Lastly, the Court must approve how notice of the settlement will be communicated to Settlement Class Members ("Notice Plan") and the proposed documents that Plaintiffs will use to communicate notice – the Long Notice, Summary Notice, and Postcard Notice (together, the "Notice").[2] Here, the Notice and the Notice Plan closely track the forms and methods routinely used to communicate notice in securities class actions, and they satisfy the requirements of Rule 23. For these reasons the Court should preliminarily certify the Settlement Class and preliminarily approve the Settlement, Notice, and Notice Plan.

## II.  OVERVIEW OF THE LITIGATION

### A.  Plaintiffs' Allegations

FAT Brands acts as a restaurant brand franchisor, collecting franchise fees and ongoing royalty fees from its franchisees. Plaintiffs allege that unbeknownst to investors, the Company's CEO, Defendant Wiederhorn, was using FAT Brands as his personal piggy bank.

---

[2] Proposed versions of the Long Notice, Summary Notice, and Postcard Notice are attached as Exhibits A-1, A-3, and A-4, respectively, to the Stipulation. Exhibit A-2 is the proposed Proof of Claim.

2

Plaintiffs allege that for years, Wiederhorn used his control over FAT Brands and various related corporate entities to make, and then forgive, loans to himself of tens of millions of dollars. Plaintiffs also allege that between October 2017 and May 2019, Wiederhorn caused FAT Brands to pay for approximately $5 million in his and his family's personal expenses. Plaintiffs also allege that Wiederhorn coordinated with his son, Thayer Wiederhorn (FAT Brands' COO), to misuse millions in Company funds in "roundtrip" transactions to fraudulently generate credit card reward points for Andrew Wiederhorn's personal benefit.

In February 2022, an article in the Los Angeles Times revealed ongoing federal investigations into allegations of Wiederhorn's misuse of corporate funds, securities fraud, and tax evasion. A few days later, the Company acknowledged that the investigations by the U.S. Department of Justice and the U.S. Securities and Exchange Commission concerned the Company's December 2020 merger with Fog Cutter Capital Group ("FCCG," an entity controlled by Wiederhorn and which controlled FAT Brands prior to the merger); transactions between the Company, FCCG, and Wiederhorn; and compensation, extensions of credit, and other benefits or payments received by Wiederhorn or his family. On the first trading day following these disclosures, the price of FAT Brands' class A common stock fell by 23%, its class B common stock by 17%, its preferred stock by 30%, and its warrants by 35%, damaging investors.

Plaintiffs allege that Defendants made numerous false and misleading statements and omissions of material facts during the Class Period, including statements touting the leadership and experience of the Company's executive management personnel and Wiederhorn in particular, statements omitting material related party transactions between the Company and Wiederhorn, statements omitting material weaknesses in the Company's internal control over financial reporting, false SOX certifications, and GAAP violations.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; 2:22-cv-01820-MCS-RAO

**B.**    **Procedural History and Settlement**

On March 18, 2022, Robert J. Matthews filed the first action styled as *Matthews v. FAT Brands, Inc., et al.*, 2:22-cv-01820 (C.D. Cal.), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). Dkt. No. 1. On April 15, 2022, Kerry Chipman filed a related action style as *Chipman v. FAT Brands, Inc., et al.*, 2:22-cv-02541 (C.D. Cal.), alleging the same claims. The Court consolidated the two actions on May 2, 2022. Dkt. No. 19.

On June 13, 2022, the Court appointed Matthews as Lead Plaintiff and The Rosen Law Firm, P.A. as Lead Counsel. Dkt. No. 34. On June 27, 2022, Plaintiffs Matthews and Melendez filed the operative Consolidated Amended Complaint for Violations of the Federal Securities Laws ("Complaint"). Dkt. No. 36.

Shortly after Plaintiffs filed their Complaint, the Parties engaged Michelle Yoshida of Phillips ADR to mediate settlement negotiations. Ms. Yoshida is a well-respected mediator with substantial experience mediating securities class actions. Prior to the mediation, the Parties exchanged detailed mediation statements and replies. The Parties attended an all-day mediation on August 9, 2022 with Ms. Yoshida. The mediation was successful and on August 10, 2022, the Parties executed a binding Term Sheet that set forth the material terms and obligations with respect to the settlement, subject to the completion of informal discovery to confirm the adequacy of the Settlement.

On September 23, 2022, the Settlement was confirmed, after completing the informal discovery, pursuant to the terms of the Stipulation.

**III.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS**

In preliminarily approving the proposed Settlement, the Court must consider whether to certify the Settlement Class under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiffs request that the Court preliminarily certify a Settlement Class consisting of "all persons and entities who purchased publicly

4

traded FAT Brands securities between December 4, 2017 and February 18, 2022, both dates inclusive, and who were damaged thereby." Stipulation ¶ 1.35 (defining "Settlement Class" and detailing various exclusions therefrom).

Courts in the Ninth Circuit and within this District routinely certify securities class actions such as this one. *See, e.g.,* Turocy v. El Pollo Loco Holdings, Inc., No. 15-cv-1343-DOC-KESx, 2018 WL 3343493 (C.D. Cal. July 3, 2018); *In re Silver Wheaton Corp. Sec. Litig.*, No. 2:15-cv-05146-CAS-JEMx, 2017 WL 2039171 (C.D. Cal. May 11, 2017). The Court should preliminarily certify the Settlement Class to permit notice to Settlement Class Members.

### A.   The Settlement Class Satisfies Rules 23(a)

Rule 23 governs class certification and requires that: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative party are typical of those of the class ("typicality"); and (4) the representative party will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a).

### 1.   Numerosity

For numerosity purposes, "classes of forty or more are considered sufficiently numerous." *In re China Med. Corp. Sec. Litig.*, No. 8:11-1061-JST (ANX), 2013 WL 12126754, at *2 (C.D. Cal. May 16, 2013). In securities fraud cases involving nationally traded stocks where, as here, "the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied." *Vinh Nguyen v. Radient Pharms. Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012). The Settlement Class comprises purchasers of FAT Brands securities, which traded on NASDAQ during the Class Period. Thus, the Settlement Class satisfies numerosity.

### 2.    Commonality

The "commonality requirement is generally construed liberally," and even one significant common issue of law or fact may suffice to show commonality. *Middlesex Cty. Ret. Sys. v. Semtech Corp.*, No. 07-cv-7114-CAS-FMOx, 2010 WL 11507255, at \*3 (C.D. Cal. Aug. 27, 2010).[3] This case involves several common questions of law and fact, including: (1) whether Defendants made false or misleading public statements or omissions during the Class Period; (2) whether Defendants acted with scienter; (3) whether Defendants' misrepresentations artificially inflated the market price of FAT Brands securities during the Settlement Class Period; and (4) whether Settlement Class Members were damaged by Defendants' statements and omissions. Commonality is satisfied even though the amount to which each class member is entitled will differ. *See In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2015 WL 6471171, at \*6 (N.D. Cal. Oct. 27, 2015); *In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 588 (N.D. Cal. 2009) ("misrepresentations by a company to its stockholders satisfy the commonality requirement of Rule 23(a)(2)"). Thus, the Settlement Class satisfies commonality.

### 3.    Typicality

"[T]ypicality is satisfied if the plaintiff's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Silver Wheaton*, 2017 WL 2039171 at \*7. Where plaintiffs allege that they purchased the security in question and suffered damages as a result of defendants' misstatements or omissions, their claims are typical of the class. *Id.* Plaintiffs purchased FAT Brands securities during the Settlement Class Period and suffered significant losses thereby. *See* Dkt. Nos. 22-2 and 36-1 (Plaintiffs' certifications). There is no indication that Plaintiffs' claims are atypical of those of the Settlement Class, or

---

[3] Emphasis is added and internal citations and quotations are omitted unless otherwise indicated.

6

that unique defenses apply to Plaintiffs' claims. *See Semtech*, 2010 WL 11507255 at *4-5. Thus, Plaintiffs satisfy the typicality requirement.

### 4.    Adequacy

A representative plaintiff is adequate if they have no conflicts of interest with the class and show that they and their counsel will prosecute the action vigorously on behalf of the class. *Semtech*, 2010 WL 11507255 at *5. Plaintiffs have submitted declarations consistent with the Private Securities Litigation Reform Act of 1995 ("PSLRA"), indicating that they reviewed the complaint and are willing to represent the Class. Dkt. Nos. 22-2, 36-1. There is no indication of any conflict of interest between Plaintiffs and the Settlement Class, thus Plaintiffs are adequate class representatives. *Silver Wheaton*, 2017 WL 2039171 at *7-8.

As to the adequacy of Lead Counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Lead Counsel have been involved in this action from the beginning, conducting a pre-filing investigation, filing an initial complaint, retaining an investigator to interview former FAT Brands employees, reviewing the pleadings in a partially overlapping derivative action which included internal Company documents, filing an amended complaint, retaining a damages expert to evaluate the case, preparing a mediation statements and replies, participating in a mediation, formalizing the settlement, and filing the instant motion for preliminary approval. Lead Counsel are experienced securities class action attorneys who are knowledgeable and capable of evaluating cases. Courts in this District and around the country have consistently found Rosen Law to be well-suited as class counsel in securities class actions. *E.g., Knox v. Yingli Green Energy Holding Co. Ltd.*, 136

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; 2:22-cv-01820-MCS-RAO

F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions"). Lead Counsel will adequately represent the Settlement Class.

### B. The Settlement Class Satisfies Rule 23(b)(3)

The Court should preliminarily certify the Settlement Class under Rule 23(b)(3), which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members ["predominance"], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ["superiority]." Fed. R. Civ. P. 23(b)(3).

### 1. Predominance

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," and is "readily met" in securities class actions. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) and 625 (1997). Here, issues surrounding Defendants' alleged misconduct, such as whether their statements were false or misleading, whether they acted with requisite scienter, and whether their conduct caused damages to Plaintiffs and the Settlement Class, are common to each member of the Settlement Class. Predominance is satisfied where plaintiffs allege that, as here, "many purchasers have been defrauded over time by similar misrepresentations." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 492 (C.D. Cal. 2006).

Allegations arising under the federal securities laws typically support a finding of predominance as they arise out of common questions and issues. *China Med.*, 2013 WL 12126754, at *5 ("Plaintiff's claims under federal securities laws entail nothing but common questions and issues for the class."); *Zynga*, 2015 WL 6471171, at *7. While the amount of damages may differ among members of the Settlement Class, Plaintiffs contend that liability and the proper measure of

8

damages can be determined on a class-wide basis. *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 640 (C.D. Cal. 2009) ("[T]he critical questions of what Defendants said, what they knew, what they withheld, and with what intent they acted, are central to all class members' claims. … Issues such as certain members' damages, timing of sales and purchases, or standing to file suit, do not have the same primacy"). Thus the Settlement Class satisfies predominance.

### 2.    Superiority

For a settlement class, superiority is more easily established. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

Other superiority factors also support certification. As the Supreme Court has recognized, "the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617. Many of the Settlement Class Members are individuals for whom prosecution of a costly individual action for relatively minor damages is not a realistic or efficient alternative. No Settlement Class Members have brought separate claims, which would likely be consolidated into this Action anyway. A class action avoids the duplication of efforts and inconsistent rulings. *Zynga*, 2015 WL 6471171, at *7 (if shareholders "each brought individual actions, they would each be required to prove the same wrongdoing to establish Defendants' liability. Different courts could interpret the claims different, resulting in inconsistent rulings or unfair results."). By efficiently resolving the claims of the entire Settlement Class at once, this Action satisfies the superiority requirement.

The Court should preliminarily certify the Settlement Class as this Action satisfies each of the Rule 23(a) and (b)(3) requirements.

## C. Ascertainability

The Ninth Circuit has recognized that certification of settlement classes requires "heightened attention to the definition of the class." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556–57 (9th Cir. 2019). A class definition is approvable "if the description of the class is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998). Rarely are there definitional issues for securities class actions settlements as proposed classes for these actions and settlements are definite and ascertainable. Here, the proposed class is clearly defined as investors who purchased publicly traded FAT Brands securities during the Settlement Class Period. *Booth v. Strategic Realty Tr., Inc.*, No. 13-CV-04921-JST, 2015 WL 3957746, at *3 (N.D. Cal. June 28, 2015) (finding the class definition "satisfies the ascertainability requirement, as the class consists of individuals who purchased [company] stock within a discrete time period."). Thus, the Settlement Class definition is suitable for certification and satisfies ascertainability.

## IV. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Public policy strongly favors settlements to resolve disputes, "particularly where complex class action litigation is concerned." *Hyundai*, 926 F.3d at 556; *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) ("the Ninth Circuit has a strong judicial policy that favors [approving] settlements, particularly where complex class action litigation is concerned") (citing *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution.")).

Rule 23(e) requires judicial approval for a settlement of claims brought as a class action. Fed. R. Civ. P. 23(e). The issue at preliminary approval turns on

whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) governs final approval and requires courts to determine if a proposed settlement is fair, reasonable, and adequate, in that:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, the Ninth Circuit uses the following factors for preliminary approval, some of which overlap with Rule 23(e)(2): "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).[4]

A preview of the factors considered by courts in granting final approval demonstrates that this Settlement is well within the range of possible approval. The proposed Settlement easily satisfies each of the factors identified under Rule

---

[4] Before notice of the Settlement is disseminated, it is not possible to gauge the reaction of the class. Plaintiffs, however, support the Settlement.

11

23(e)(2), as well as the applicable Ninth Circuit factors. The Court will likely be able to approve the Settlement as fair, reasonable and adequate.

### A. Plaintiffs and Lead Counsel Adequately Represented the Class

Courts must consider whether the "class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). The Ninth Circuit requires courts to resolve two questions to determine adequacy: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members[;] and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Plaintiffs and Lead Counsel have adequately represented the Settlement Class throughout this Action. Plaintiffs have no antagonistic interests to other class members, their claims are typical of Settlement Class Members' claims, and Plaintiffs share an interest with the other Settlement Class Members in obtaining the largest possible recovery for the Settlement Class. *Mild v. PPG Indus., Inc.*, No. 218CV04231RGKJEM, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."). Further, Plaintiffs have worked closely with Lead Counsel throughout the pendency of this Action to achieve the best possible result for themselves and the Settlement Class.

As discussed above, Plaintiffs retained highly experienced counsel with a successful track record of representing investors in similar securities cases. *Supra*, Section III(A)(4); *see also* Dkt. No. 22-4 (Rosen Law Firm Resume). Lead Counsel has vigorously prosecuted the Action and will continue to do so through the final settlement approval and distribution process.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; 2:22-cv-01820-MCS-RAO

**B.     The Settlement is the Product of Arm's-Length Negotiations**

Rule 23(e)(2)(B) addresses whether "the [settlement] proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). The use of an experienced mediator further supports satisfaction of this factor. *Satchell v. Fed. Express Corp.*, No. C 03 2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

The proposed Settlement followed hard-fought litigation and arm's-length negotiations. The Parties exchanged detailed mediation statements, presenting, among other things, their respective views on the merits of the Action, including Defendants' defenses and issues relating to causation and damages. The Parties participated in a mediation session with Michelle Yoshida of Phillips ADR, who has substantial experience mediating securities class actions such as this one. With Ms. Yoshida's guidance, the Parties were able to come to terms at the mediation session, reaching an agreement in principle that was documented with a term sheet the following day. *Todd v. STAAR Surgical Co.*, No. CV 14-5263 MWF (GJSx), 2017 WL 4877417, at *2 (C.D. Cal. Oct. 24, 2017) (that the parties reached a settlement as a result of mediation with Ms. Yoshida weighs in favor of approval). The negotiations were at all times adversarial and conducted at arm's length.

**C.     The Relief Provided to the Class is Adequate**

Pursuant to Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C)(i). This requirement incorporates three of the traditional *Hanlon* factors: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; and the risk of maintaining class action status through the trial. *Wong v. Arlo Techs., Inc.*, No. 5:19-CV-00372-BLF, 2021 WL 1531171,

13

at *8 (N.D. Cal. Apr. 19, 2021) (*citing Hanlon*, 150 F.3d at 1026). These factors support preliminary approval of the Settlement.

> **1.      The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Continued Litigation**

In assessing whether the Settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation, including the strengths and weaknesses of the case, and the complexity, expense, and likely duration of continued litigation, against the benefits afforded to the Settlement Class, including the immediacy and certainty of a financial recovery. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458, 459 (9th Cir. 2000), *as amended* (June 19, 2000); *Officers for Justice*, 688 F.2d at 625. The risks of continued litigation here are considerable, especially at the pleading stage. The PSLRA made the pleading stage of securities litigation a "technical and demanding corner of the law." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

The Complaint has not yet been tested by a motion to dismiss, and there are distinct risks here to protracted litigation. *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) ("Courts have recognized that, in general, securities actions are highly complex and that securities class litigation is notably difficult and notoriously uncertain.").

Defendants deny any wrongdoing and would present a multi-pronged defense. Plaintiffs and Lead Counsel believe that the case has merit, but they recognize the significant risk and expense that would be necessary to prosecute Plaintiffs' claims successfully through a motion to dismiss, class certification, extensive discovery, summary judgment, trial, and subsequent appeals, as well as the inherent difficulties and delays complex litigation like this entails. *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 612 (S.D. Cal. 2008) (preliminarily

14

approving settlement where "[l]iability remains uncertain" as "it appears to the Court that plaintiffs have a viable claim regarding the alleged securities fraud and Defendants have a viable defense against such claims"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (approving settlement and noting that "the Court also recognizes that the issues of scienter and causation are complex and difficult to establish at trial.").

Proving loss causation and damages would also be risky, complicated, and uncertain, involving conflicting expert testimony. *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 260–61 (D.N.H. 2007) ("Proving loss causation would be complex and difficult. Moreover, even if the jury agreed to impose liability, the trial would likely involve a confusing 'battle of the experts' over damages."); *Salazar v. Midwest Servicing Grp., Inc.*, No. 17-CV-0137-PSG-KS, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018) (a settlement agreement's elimination of risk, delay, and further expenses weighs in favor of approval).

Even if Plaintiffs defeated Defendants' anticipated motions to dismiss, continued litigation would be complex, uncertain, costly, and lengthy. Further litigation would likely require extensive document discovery, depositions of numerous witnesses, submitting expert reports and testimony, overcoming motions for summary judgment, and an expensive and risky trial. Any favorable judgment for the Settlement Class would be subject to post-trial motions and appeal, which could prolong the case for years without certainty of the outcome. By contrast, the Settlement provides a favorable, immediate recovery and eliminates the risk, delay, and expense of continued litigation. While a greater recovery might be a theoretical possibility, evaluating the benefits of settlement must be tempered by recognizing that any compromise involves concessions on the part of all parties. "The very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; 2:22-cv-01820-MCS-RAO

The Settlement resulted from balancing the risks, costs, and delay inherent in complex cases with respect to all parties. Thus, the benefits created by the Settlement weigh heavily in favor of granting the motion for preliminary approval. Considering the risks of continued litigation and the time and expense that would be incurred to prosecute the Action through a trial, the $3 million Settlement is a reasonable and adequate recovery that is in the Settlement Class's best interests.

### 2. Risk of Maintaining Class Action Status Through Trial

The Settlement was reached before Plaintiffs moved for class certification. While Plaintiffs believe that class certification would be appropriate (*see* Section III, *supra*), it cannot be assured, and Defendants could attempt to alter or amend a class certification order. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("there is no guarantee the [class] certification would survive through trial, as Defendants might have sought decertification or modification of the class"). "While this may not be a particularly weighty factor, on balance it somewhat favors approval of the proposed Settlement." *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 506–07 (W.D. Pa. 2003).

### D. The Remaining Rule 23(e)(2)(C) Factors Support Approval

Rule 23(e)(2)(C)(ii)-(iv) requires courts to consider whether the relief provided for the class is adequate. These factors support approving the Settlement.

### 1. The Methods of Distributing Relief and Processing Claims

The method for distributing relief to eligible claimants and for processing Settlement Class Members' claims includes standard and effective procedures for processing claims and efficiently distributing the Net Settlement Fund. Plaintiffs request that the Court appoint Strategic Claims Services ("SCS") as Claims Administrator.[5] If SCS is appointed it will, under Lead Counsel's guidance, process

---

[5] Lead Counsel solicited bids from several reputable claims administration firms, receiving five total bids. SCS's bid was the most competitive.

16

claims, allow Claimants an opportunity to cure any deficiencies or request the Court to review a denial of their Claim(s), and pay Authorized Claimants their *pro rata* share of the Net Settlement Fund pursuant to the Plan of Allocation set forth in the Long Notice. The method proposed here is both effective and necessary, as neither Plaintiffs nor Defendants possess the individual investor trading data required for a process to distribute the Net Settlement Fund.

### 2. Proposed Attorneys' Fees

The Notice explains that Lead Counsel will apply for attorneys' fees not to exceed one third of the Settlement, or $1,000,000. An award of attorneys' fees of up to one third of the Settlement Amount is reasonable and consistent with the fees awarded in similar actions in this Circuit. *E.g., Mego*, 213 F.3d at 463 (affirming fee award of one-third of $1.725 million settlement); *Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMX), 2019 WL 5173771, at *10 (C.D. Cal. Oct. 10, 2019) (awarding one-third of $2,050,000 settlement fund where settlement was reached as a motion to dismiss was still pending); *In re Audioeye, Inc., Sec. Litig.*, No. CV-15-00163-TUC-DCB, 2017 WL 5514690, at *4 (D. Ariz. May 8, 2017) (awarding fees of one-third of $1,525,000 settlement). Lead Counsel will receive no payment, and have not, until after the Court issues an order awarding attorneys' fees following the Settlement Hearing.[6]

### 3. Other Agreements

The Parties also executed a standard supplemental agreement providing that if Settlement Class Members opt out such that the number of shares held by those

---

[6] Section 10(e) of the Court's Initial Standing Order for Civil Cases addresses applications for future attorneys' fees. Lead Counsel intend to apply only once for an award of attorneys' fees as a percentage of the Settlement, concurrently with Plaintiffs' motion for final approval of the Settlement. Although Lead Counsel will continue to provide services to the Settlement Class beyond that time, they will seek no additional compensation. Lead Counsel will provide all information required by the Court's Initial Standing Order (Sections 10(d) and (e) with their fee application.

persons opting out reaches a certain threshold, FAT Brands may terminate the Settlement. Stipulation ¶10.3. The terms of the supplemental agreement are kept confidential to avoid incentivizing Settlement Class Members to opt out solely to leverage the threshold to exact an individual settlement, and does not detract from the fairness of the Settlement. *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."); *Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) ("This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement.")

### E.    The Proposed Settlement Does Not Unjustly Favor Any Settlement Class Member, Including Plaintiffs

Courts must also evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). The Settlement does not offer preferential treatment to any Settlement Class Member, including Plaintiffs. The Plan of Allocation proposed in the Long Notice provides for distribution of the Net Settlement Fund to Authorized Claimants who suffered losses on their transactions in FAT Brands securities during the Settlement Class Period, based on when each investor purchased, acquired, and/or sold FAT Brands securities. The Plan of Allocation was developed by Lead Counsel after consulting with the Claims Administrator and Plaintiffs' damages expert. All Settlement Class Members' recoveries will be based upon the relative losses they sustained.

Plaintiffs will receive a *pro rata* distribution from the Net Settlement Fund per the Plan of Allocation, just like all other Settlement Class Members. *Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("A settlement in a securities class action case can be reasonable if it 'fairly treats class members by awarding a pro rata share to every

18

Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.'").

Plaintiffs will also seek reimbursement of costs incurred representing the Settlement Class, as authorized by the PSLRA. *Mego*, 213 F.3d at 454 (affirming reimbursement to class representative in securities class action settlement).

### F.    The Remaining Ninth Circuit Factors Favor Approval

In *Hanlon*, 150 F.3d 1011, the Ninth Circuit identified additional factors not co-extensive with Rule 23(e)(2). These factors support preliminary approval.

### 1.    The Amount Offered in Settlement

"To evaluate the adequacy of the settlement amount, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Hefler*, 2018 WL 4207245, at *9. The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987); *Vikram v. First Student Mgmt., LLC*, No. 17-CV-04656-KAW, 2019 WL 1084169, at *3 (N.D. Cal. Mar. 7, 2019) ("This determination requires evaluating the relative strengths and weaknesses of the plaintiffs' case"). Evaluation of a settlement must recognize that parties must make compromises to reach an agreement. *Officers for Justice*, 688 F.2d at 624.

The $3 million Settlement Amount is reasonable and warrants preliminary approval. The Settlement recovers approximately 31% of the maximum estimated damages of $9.7 million under Plaintiffs' best-case scenario, as estimated by Plaintiffs' damages expert. This best-case scenario assumes that: (i) Plaintiffs are able to succeed on a motion to dismiss, at summary judgment, and at trial; (ii) the Court certifies the same class period as the Settlement Class Period, for each type

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; 2:22-cv-01820-MCS-RAO

of security; and (iii) the Court and jury accepted Plaintiffs' damages theory, including proof of loss causation. Anything less than a complete victory would decrease, or potentially eliminate, recoverable damages.

Moreover, the $3 million Settlement is an extremely favorable result because Defendants' insurer has disclaimed coverage entirely. Insurance policies are typically the main source for funding a judgment or settlement, and Plaintiffs faced the prospect of securing funds from Defendants' own pockets. Continuing to litigate the Action would have depleted the Company's already limited cash reserves and may have resulted in a smaller recovery, or none at all. Moreover, Defendants were facing concurrent liability from other lawsuits including a derivative shareholder action, *Harris v. Junger*, No. 2021-0511-SG (Del. Ch.) ("*Harris* Action"), as well as investigations by the Department of Justice and the SEC. The Company was also burdened with a substantial preexisting debt load, as alleged in the Complaint. Thus, a larger recovery was unlikely had litigation continued.

The percentage of maximum damages recovered here evinces an excellent result for the class, well above the range of other securities class action settlements with similar total damages. *Omnivision*, 559 F. Supp. 2d at 1042 (approving 9% recovery); *In re Regulus Therapeutics Inc. Sec. Litig.*, No. 3:17-CV-182-BTM-RBB, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving 1.99% recovery); *Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."). According to Cornerstone Research, in 2021 roughly 16% of securities class actions settled for less than $2 million.[7] The

---

[7] Laarni T. Bulan, *et al.*, Securities Class Action Settlements: 2021 Review and Analysis (Cornerstone Research), at 4 and 6, *available* at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2021-Review-and-Analysis

20

median recovery in cases such as this one alleging Rule 10b-5 claims with less than $25 million in maximum estimated damages was approximately 12.5% of estimated damages in 2021, and 18.2% between 2012-2020. *Id.*

### 2. The Extent of Discovery and Stage of Proceedings

In considering a class action settlement, courts look for indications that the parties carefully investigated the claims before reaching a resolution. *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 6248426, at *13-*14 (N.D. Cal. Oct. 25, 2016) (discovery is "not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement").

Lead Counsel conducted an extensive investigation of the claims asserted in this Action, including: (i) reviewing FAT Brands' SEC filings, press releases, conference calls, and other public statements during the Settlement Class Period; (ii) reviewing public documents, reports, announcements, and news articles concerning FAT Brands including research reports by securities and financial analysts; (iii) reviewing and incorporating into the Complaint the pleadings and filings in the *Harris* Action (a case with substantial factual overlap with this Action), including an amended complaint filed after a review of documents from shareholders' books and records request, which survived a motion to dismiss; and (iv) retaining an investigator to independently interview former FAT Brands employees and other knowledgeable third parties.

Although formal discovery has not commenced, Defendants agreed to produce documents for Plaintiffs' review in informal confirmatory discovery to allow Plaintiffs further insight into the strengths of their claims and Defendants' likely defenses. Prior to executing the Stipulation, Defendants produced and Plaintiffs reviewed over 50,000 documents, including documents produced in the *Harris* Action and additional documents pertinent to Plaintiffs' unique claims.

21

Lead Counsel's efforts allowed them to make an informed assessment of the strengths and weaknesses of this Action, essential to recommending to Plaintiffs whether to settle on behalf of the Settlement Class. Reviewing Defendants' mediation statement and reply, and negotiating the Settlement during the mediation further informed Lead Counsel about the strengths and weaknesses of the case. As a result, Plaintiffs and Lead Counsel had an ample understanding of the merits and weaknesses of this Action and the reasonableness of the Settlement.

### 3.    Experienced Counsel's Recommendations

Courts also give weight to the opinion of experienced and informed counsel supporting the settlement. *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation"). Lead Counsel have extensive securities litigation experience and obtained a thorough understanding of the merits and risks of the Action. Lead Counsel's support for the reasonableness of this Settlement supports preliminary approval. Defendants are represented by experienced and skilled securities practitioners at Sheppard, Mullin, Richter & Hampton LLP and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., who were at least as well-informed regarding the case, and their representation of Defendants was equally vigorous. The fact that experienced and informed counsel recommended the Settlement supports preliminary approval.

## V.    THE COURT SHOULD APPROVE THE NOTICE PLAN

**The Notice Plan is Adequate:** Rule 23(e) requires that notice of the Settlement be provided to Settlement Class Members in such manner as the Court directs. The proposed Notice Plan includes: (1) emailing links to the Long Notice and Proof of Claim, or if no email address can be obtained, mailing the Postcard Notice, to Settlement Class Members who can be identified with reasonable effort;

22

(2) posting the Long Notice, Proof of Claim, and Stipulation on a Settlement website maintained by SCS; (3) allowing Settlement Class Members to submit their claims electronically at the Settlement website; (4) upon request, mailing copies of the Long Notice and/or Proof of Claim; and (5) publishing the Summary Notice over *GlobeNewswire* and in *Investor's Business Daily.*

Courts routinely find these methods of notice sufficient. "The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases); *Baker v. SeaWorld Ent., Inc.*, No. 14CV2129-MMA (AGS), 2020 WL 818893, at *2–*3 (S.D. Cal. Feb. 19, 2020) (approving similar notice program). Defendants will also provide notice pursuant to the Class Action Fairness Act, 28 U.S.C. §1715 *et seq.*

**The Notice is Adequate:** As required by Rule 23(c)(2), the Notice will inform Settlement Class Members of the claims alleged in the Action, the terms of the Settlement, and the right of Settlement Class Members to opt out or object to the Settlement, Plan of Allocation, and/or the proposed attorneys' fees and expenses. The Ninth Circuit has held that "[n]otice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009). Moreover, the proposed notice program satisfies due process because it includes both individual notice and general publication. *See, e.g., In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *23–24 (S.D.N.Y. Dec. 23, 2009).

The proposed Long Notice includes all of the information required by the PSLRA, Federal Rules of Civil Procedure, and due process. The proposed Long Notice provides, in plain English: (a) the rights of Settlement Class Members, including the manner in which they may lodge objections or request exclusion and

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; 2:22-cv-01820-MCS-RAO

instructions on how to complete and submit a Proof of Claim to the Claims Administrator; (b) the nature, history, progress, and status of the litigation; (c) the proposed Settlement; (d) the process for filing a Proof of Claim; (e) a description of the proposed Plan of Allocation; (f) the maximum attorneys' fees and expenses and award to Plaintiffs to be sought by Lead Counsel; (g) the definition of the Settlement Class; (h) the reasons the Parties have proposed the Settlement; (i) the estimated distribution per damaged share; (j) the Settlement Class's claims and issues; (k) the Parties' disagreement over damages and liability; (l) contact information for all counsel and the Court; and (m) the time, date, and location of the Settlement Hearing. *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F).

Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). The Notice alerts Settlement Class Members that Lead Counsel will apply to the Court for attorneys' fees of up to one third of the Settlement Amount, reimbursement of expenses of up to $45,000, and an award to Plaintiffs of up to $1,500 each, or $3,000 total, all to be paid from the Settlement Fund. Accordingly, the Notice Plan and the Notice each satisfy the requirements of the Federal Rules of Civil Procedure, the PSLRA, and due process.

## VI.   THE PROPOSED SCHEDULE

Plaintiffs respectfully propose the following procedural schedule, which tracks those used in similar class action settlements and provides due process for potential Settlement Class Members with respect to their rights concerning the Settlement. If this schedule is not convenient for the Court, Plaintiffs request the Court use the same or greater intervals between each event listed to allow sufficient time to comply with the Preliminary Approval Order.

| Event | Deadline for Compliance |
|---|---|
| Date for the Settlement Hearing. | At least 100 days from Preliminary Approval Order (Preliminary Approval Order ¶6) |
| Emailing link to Settlement webpage with Long Notice and Proof of Claim; Mailing the Postcard Notice | Within 20 Business Days following Prelim. App. Order (Preliminary Approval Order ¶14) |
| Posting the: Stipulation; Preliminary Approval Order; Long Notice; and Proof of Claim on the Settlement website. | Within 16 days following entry of the Prelim. App. Order (Preliminary Approval Order ¶17) |
| Publication of the Summary Notice. | Within 10 days from emailing link to Long Notice/Mailing Postcard (Preliminary Approval Order ¶18) |
| Plaintiffs to file papers in support of the Settlement, the Plan, and motion for attorneys' fees and expenses. | No later than 28 days prior to Settlement Hearing (Preliminary Approval Order ¶29) |
| Deadline for requests for exclusion and for objections | No later than 21 days prior to Settlement Hearing (Preliminary Approval Order ¶¶22, 26) |
| Deadline for Proof of Claims. | No later than 30 days prior to Settlement Hearing (Preliminary Approval Order ¶20(a)) |
| Plaintiffs to file reply papers in support of the Settlement, the Plan, and application for attorneys' fees and expenses. | No later than 14 days prior to Settlement Hearing (Preliminary Approval Order ¶30) |

## VII.   CONCLUSION

For the foregoing reasons, the Court should enter the proposed Preliminary Approval Order, which will: (a) preliminarily certify the Settlement Class; (b) preliminarily approve the Settlement; (c) approve the Notice Plan and direct dissemination of the Notice; and (d) set a Settlement Hearing date to consider final approval of the Settlement and related matters.

25

Dated: September 23, 2022                    **THE ROSEN LAW FIRM, P.A.**

                                             */s/Laurence M. Rosen*
                                             Laurence M. Rosen (SBN 219683)
                                             355 South Grand Avenue, Suite 2450
                                             Los Angeles, CA 90071
                                             Telephone: (213) 785-2610
                                             Facsimile: (213) 226-4684
                                             Email: lrosen@rosenlegal.com

                                             Phillip Kim*
                                             275 Madison Avenue, 40th Floor
                                             New York, NY 10016
                                             Telephone: (212) 686-1060
                                             Facsimile: (212) 202-3827
                                             Email: pkim@rosenlegal.com

                                             Joshua Baker (*pro hac vice*)
                                             101 Greenwood Avenue, Suite 440
                                             Jenkintown, PA 19046
                                             Telephone: (215) 600-2817
                                             Facsimile: (212) 202-3827
                                             Email: jbaker@rosenlegal.com

                                             **pro hac vice* application forthcoming

                                             *Lead Counsel for Plaintiffs*

                                             **POMERANTZ LLP**
                                             Jeremy Lieberman (*pro hac vice*)
                                             Brenda Szydlo (*pro hac vice*)
                                             600 Third Avenue, 20th Floor
                                             New York, NY 10016
                                             Telephone: (646) 581-9996
                                             Email: jlieberman@pomlaw.com
                                             Email: bszydlo@pomlaw.com

26

**BRONSTEIN, GERWITZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

*Additional Counsel for Plaintiffs*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; 2:22-cv-01820-MCS-RAO

**CERTIFICATE OF SERVICE**

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

I am the managing attorney of The Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071. I am over the age of eighteen.

On September 23, 2022, I electronically filed the foregoing MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on September 23, 2022.

/s/Laurence M. Rosen

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; 2:22-cv-01820-MCS-RAO