1  Laurence M. Rosen (SBN 219683)
2  **THE ROSEN LAW FIRM, P.A.**
   355 South Grand Avenue, Suite 2450
3  Los Angeles, CA 90071
4  Telephone: (213) 785-2610
   Facsimile: (213) 226-4684
5  Email: lrosen@rosenlegal.com

6
   *Lead Counsel for Plaintiffs*
7
8  [*additional counsel on signature page*]

9

10              UNITED STATES DISTRICT COURT
11              CENTRAL DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| 13  IN RE: | Case No. 2:22-cv-01820-MCS-RAO |
| 14  FAT BRANDS INC.<br>15  SECURITIES LITIGATION | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS** |
| | <u>CLASS ACTION</u> |
| | Date: February 28, 2023<br>Time: 9:00 a.m.<br>Courtroom: 7C<br>Judge: Hon. Mark C. Scarsi |

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................... 1

II.     CASE BACKGROUND ........................................................................... 3

   A.   Plaintiffs' Allegations ..................................................................... 3

   B.   Procedural History and Settlement ................................................ 4

III.    CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED ...... 5

IV.     THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ........ 5

   A.   The Overall Strength of Plaintiffs' Case, Including the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Final Approval of the Settlement ................................................... 7

      1.   Plaintiffs Faced the Risk of Dismissal ...................................... 8

      2.   Plaintiffs Faced the Risks of Obtaining Class Certification and Maintaining Class Action Status Through Trial ...................... 8

      3.   Plaintiffs Faced Additional Risks of Continued Litigation ..................... 9

   B.   The Amount Obtained in Settlement Supports Final Approval .................... 11

   C.   The Extent of Discovery Completed and the Stage of the Proceedings Support Final Approval ............................................................. 13

   D.   The Proposed Settlement Resulted from Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel ........................... 16

   E.   The Favorable Reaction of the Settlement Class Supports Approval ........... 18

   F.   The Settlement Meets the Remaining Rule 23(e)(2) Factors ........................ 19

      1.   The Proposed Method for Distributing Relief Is Effective ................... 19

      2.   The Proposed Award of Attorneys' Fees is Appropriate ...................... 20

      3.   The Parties Have No Other Agreements Besides Opt-Outs ................... 20

4.    There is No Preferential Treatment; the Proposed Plan of Allocation Treats Class Members Equitably ............................................................21

G.    The Court Should Approve the Plan of Allocation .......................................21

V.    NOTICE TO THE SETTLEMENT CLASS SATISFIED DUE PROCESS .22

VI.    CONCLUSION ................................................................................................24

1

## <u>TABLE OF AUTHORITIES</u>

2
<u>Page(s)</u>

3
## <u>Cases</u>

4
*Baker v. SeaWorld Ent., Inc.*,

5
 No. 14CV2129-MMA (AGS), 2020 WL 818893 (S.D. Cal. Feb. 19, 2020)..........23

6
*Basic Inc. v. Levinson*,

7
 485 U.S. 224 (1988).................................................................9

8
*Christine Asia Co. v. Yun Ma*,

9
 No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)............17

10

11
*Chun-Hoon v. McKee Foods Corp.*,

 716 F. Supp. 2d 848 (N.D. Cal. 2010) .......................................19

12

13
*Churchill Vill., L.L.C. v. Gen. Elec.*,

 361 F.3d 566 (9th Cir. 2004) ...............................................19

14

15
*Destefano v. Zynga, Inc.*,

 No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ...................19

16

17
*Dura Pharms., Inc. v. Broudo*,

18
 544 U.S. 336 (2005).................................................................8

19
*Eminence Cap., LLC v. Aspeon, Inc.*,

20
 316 F.3d 1048 (9th Cir. 2003) ...............................................8

21
*Evans v. Jeff D.*,

22
 475 U.S. 717 (1986).................................................................5

23
*Glass v. UBS Fin. Servs., Inc.*,

24
 No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) .....................15

25
*Hanlon v. Chrysler Corp.*,

26
 150 F.3d 1011 (9th Cir. 1998) ...............................................6, 11, 19

27
*Hefler v. Wells Fargo & Co.*,

28
 No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ..................21

*Hefler v. Wells Fargo & Co.*,
No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)...................7

Hubbard v. BankAtlantic Bancorp, Inc.,
688 F.3d 713 (11th Cir. 2012) ...............................................................................12

*In re BankAtlantic Bancorp, Inc.*,
No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ........................10

*In re Datatec Sys., Inc. Sec. Litig.*,
No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007) .....................22

*In re Gen. Instrument Sec. Litig.*,
209 F. Supp. 2d 423 (E.D. Pa. 2001).....................................................................22

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ...........................................................................13

*In re GTT Comnc'ns, Inc. Sec. Litig.*,
No. 2:21-CV-00270-DOC-AS (C.D. Cal. Mar. 22, 2022) .....................................15

*In re Heritage Bond Litig.*,
No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005).....7, 10, 13, 17

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................................15, 23

*In re LJ Int'l, Inc. Sec. Litig.*,
No. CV0706076GAFJWJX, 2009 WL 10669955 (C.D. Cal. Oct. 19, 2009)..........8

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) .........................................................................*passim*

*In re NeoPharm, Inc. Sec. Litig.*,
705 F. Supp. 2d 946 (N.D. Ill. 2010)......................................................................10

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008).................................................5, 13, 18, 21

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) ................................................................. 10

*In re Pac. Enterprises Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ................................................................. 16

*In re Portal Software, Inc. Sec. Litig.*,
   No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) .................. 24

*In re Portal Software, Inc. Sec. Litig.*,
   No. C 03 5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) .................... 16

*In re Puda Coal Sec. Inc., Litig.*,
   30 F. Supp. 3d 230 (S.D.N.Y. 2014) ....................................................... 10

*In re Rambus Inc. Derivative Litig.*,
   No. C 06-3513 JF (HRL), 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ............... 18

*In re Regulus Therapeutics Inc. Sec. Litig.*,
   No. 3:17-CV-182-BTM-RBB, 2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ........ 13

*In re Sumitomo Copper Litig.*,
   189 F.R.D. 274 (S.D.N.Y. 1999) ............................................................. 7

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ................................................................. 5

*In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   No. MDL 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) .......... 14

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ..................................................... 22

*In re Zynga Inc. Sec. Litig.*,
   No. 12-CV-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ............... 15

*Kamakana v. City & Cnty. of Honolulu*,
   447 F.3d 1172 (9th Cir. 2006) ............................................................... 21

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:22-cv-01820-MCS-RAO

*Knox v. Yingli Green Energy Holding Co. Ltd.,*
    136 F. Supp. 3d 1159 (C.D. Cal. 2015) .................................................................. 17

*Lane v. Facebook, Inc.,*
    696 F.3d 811 (9th Cir. 2012) ...................................................................................... 6

*Linney v. Cellular Alaska P'ship,*
    151 F.3d 1234 (9th Cir. 1998) .................................................................................. 15

*Low v. Trump Univ., LLC,*
    246 F. Supp. 3d 1295 (S.D. Cal. 2017) .................................................................... 7

*Maine State Ret. Sys. v. Countrywide Fin. Corp.,*
    No. 2:10-CV-00302 MRP, 2013 WL 6577020 (C.D. Cal. Dec. 5, 2013) .............. 19

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) .................................................................. 11, 17, 18

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco,*
    688 F.2d 615 (9th Cir. 1982) .......................................................................... 6, 11, 12

*Pace v. Quintanilla,*
    No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) ........... 17

*Perez v. IZEA, Inc.,*
    No. 18-cv-02784-SVW-GJS (C.D. Cal. Sept. 26, 2019) ........................................ 15

*Rieckborn v. Velti PLC,*
    No. 13-CV-03889-WHO, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015) .................. 15

*Riker v. Gibbons,*
    No. 3:08-CV-00115-LRH, 2010 WL 4366012 (D. Nev. Oct. 28, 2010) .......... 16, 22

*Robbins v. Koger Properties, Inc.,*
    116 F.3d 1441 (11th Cir. 1997) ................................................................................ 11

*Rodriguez v. W. Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) .................................................................................... 23

*Romero, et al., v. Growlife, Inc., et al.*,
   Case No. 2:14-cv-03015-CAS-JEM ........................................................................ 12

*Salazar v. Midwest Servicing Grp., Inc.*,
   No. 17-CV-0137-PSG-KS, 2018 WL 3031503 (C.D. Cal. June 4, 2018) ............... 7

*Satchell v. Fed. Express Corp.*,
   No. C 03 2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .......................... 16

*Todd v. STAAR Surgical Co.*,
   No. CV 14-5263 MWF (GJSx), 2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) ..... 16

*Tom v. Com Dev USA, LLC*,
   No. 16CV1363PSGGJSX, 2017 WL 10378629 (C.D. Cal. Dec. 4, 2017) .............. 6

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ......................................................................... 6, 7, 12

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ................................................................................ 8

**Statutes**

15 U.S.C. § 78u-4(a)(4) ......................................................................................... 20

15 U.S.C. § 78u-4(a)(7) ......................................................................................... 23

**Rules**

Fed. R. Civ. P. 23 .............................................................................................*passim*

**Other Authorities**

Manual for Complex Litigation (Third) § 30.44 (1995) ........................................ 18

Lead Plaintiff Robert J. Matthews and named plaintiff Michael Melendez ("Plaintiffs") submit this memorandum in support of their Motion for Final Approval of the Settlement and Plan of Allocation, and Final Certification of the Settlement Class.[1]

## I. INTRODUCTION

Plaintiffs and Defendants FAT Brands, Inc. ("FAT Brands" or the "Company"), Andrew Wiederhorn, Ron Roe, Ken Kuick, Squire Junger, Silvia Kessel, James Neuhauser, Edward H. Rensi, and Rebecca Hershinger ("Defendants" and with Plaintiffs, the "Parties") reached a settlement of this securities class action for $3,000,000 ("Settlement") comprised of $2,500,000 in cash and $500,000 in FAT Brands Class A Common Stock. Stipulation ¶1.34 The Settlement, reached only after arm's-length negotiations, is a fair, reasonable, and adequate result, recovering approximately 31% of the maximum estimated damages of $9.7 million under Plaintiffs' best-case scenario as estimated by Plaintiffs' damages expert, despite significant risk.

Plaintiffs now seek final approval of the Settlement. If approved, the Settlement will completely resolve the Action, settling all claims of Settlement Class Members who have not submitted valid requests for exclusion. The Settlement provides a substantial recovery to the Settlement Class despite several obstacles that Plaintiffs faced, including Defendants' anticipated motions to dismiss, the availability of evidence, Defendants' potential defenses, the risks of prosecuting this litigation

---

[1] Unless otherwise defined herein, capitalized terms take the same meaning provided in the Stipulation of Settlement, filed on September 23, 2022 ("Settlement" or "Stipulation") (Dkt. No. 56). Internal citations and quotations are omitted and emphasis is added unless otherwise noted. Citations to "Rosen Decl." are to the Declaration of Laurence M. Rosen, filed herewith. Citations to "Bravata Decl." are to the Declaration of Josephine Bravata, attached as Exhibit 1 to the Rosen Decl. Citations to "Fee Brief" are to the Memorandum of Points and Authorities in support of the Motion for an Award of Attorneys' Fees and Expenses, and Award to Plaintiffs, filed herewith.

through trial and appeals, and the real danger that Plaintiffs would not be able to obtain a larger sum if litigation were to continue, as there were no available insurance funds and the same Defendants were facing several other competing lawsuits, investigations, and liabilities.

The terms of the Settlement are set forth in the Stipulation. In the Court's Order re: Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order") (Dkt. No. 61), the Court preliminarily approved the Settlement, preliminarily certified the Settlement Class for settlement purposes, and directed that notice be disseminated to potential members of the Settlement Class.

To grant final approval of the Settlement, this Court will evaluate whether it is "fair, reasonable, and adequate," focusing on the adequacy of the Settlement Amount in consideration for the release of the claims in the Action. Fed. R. Civ. P. 23(e). Plaintiffs believe their case is strong, but they determined that executing the Settlement was in the best interests of the Settlement Class, especially given the risks inherent in this complex litigation. Even if Plaintiffs survived the anticipated motions to dismiss, they faced other material obstacles to proving their claims, such as prevailing at class certification, summary judgment, and trial. Rather than engaging in expensive, protracted litigation with no assurance of success, Plaintiffs agreed to an early resolution of this action as the best outcome for the Settlement Class. Through protracted negotiations with Defendants, Plaintiffs obtained a Settlement that is fair, reasonable, and adequate under the circumstances. The Settlement eliminates the risks of continued litigation and locks in a substantial recovery for the Settlement Class. In light of the obstacles to recovery and the significant amount of time and expenses that continued litigation would entail, the Court should approve the Settlement as fair, reasonable, and adequate.

The Court will also evaluate whether the proposed Plan of Allocation ("Plan") is fair, reasonable, and adequate. Here, Lead Counsel developed the proposed Plan in consultation with Plaintiffs' damages expert and the Claims Administrator. The

proposed Plan comports with applicable legal principles and Plaintiffs' theory of damages, and in no way favors Plaintiffs over other members of the Settlement Class. The Court should approve the Plan.

## II.    CASE BACKGROUND

### A.    Plaintiffs' Allegations

FAT Brands acts as a restaurant brand franchisor, collecting franchise fees and ongoing royalty fees from its franchisees. Plaintiffs allege that unbeknownst to investors, the Company's CEO, Defendant Wiederhorn, was using FAT Brands as his personal piggy bank.

Plaintiffs allege that for years, Wiederhorn used his control over FAT Brands and various related corporate entities to make, and then forgive, loans to himself of tens of millions of dollars. Plaintiffs also allege that between October 2017 and May 2019, Wiederhorn caused FAT Brands to pay for approximately $5 million in his and his family's personal expenses. Plaintiffs also allege that Wiederhorn coordinated with his son, Thayer Wiederhorn (FAT Brands' COO), to misuse millions in Company funds in "roundtrip" transactions to fraudulently generate credit card reward points for Andrew Wiederhorn's personal benefit.

In February 2022, an article in the *Los Angeles Times* revealed ongoing federal investigations into allegations of Wiederhorn's misuse of corporate funds, securities fraud, and tax evasion. A few days later, the Company acknowledged that the investigations by the U.S. Department of Justice and the U.S. Securities and Exchange Commission concerned the Company's December 2020 merger with Fog Cutter Capital Group ("FCCG," an entity controlled by Wiederhorn and which controlled FAT Brands prior to the merger); transactions between the Company, FCCG, and Wiederhorn; and compensation, extensions of credit, and other benefits or payments received by Wiederhorn or his family. On the first trading day following these disclosures, the price of FAT Brands' class A common stock fell by 23%, its class B

common stock by 17%, its preferred stock by 30%, and its warrants by 35%, damaging investors.

Plaintiffs allege that Defendants made numerous false and misleading statements and omissions of material facts during the Class Period, including statements touting the leadership and experience of the Company's executive management personnel and Wiederhorn in particular, statements omitting material related party transactions between the Company and Wiederhorn, statements omitting material weaknesses in the Company's internal control over financial reporting, false Sarbanes-Oxley Act of 2022 certifications, and GAAP violations.

**B.    Procedural History and Settlement**

On March 18, 2022, Robert J. Matthews filed the first action styled as *Matthews v. FAT Brands, Inc., et al.*, 2:22-cv-01820 (C.D. Cal.), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). Dkt. No. 1. On April 15, 2022, Kerry Chipman filed a related action style as *Chipman v. FAT Brands, Inc., et al.*, 2:22-cv-02541 (C.D. Cal.), alleging the same claims. The Court consolidated the two actions on May 2, 2022. Dkt. No. 19.

On June 13, 2022, the Court appointed Matthews as Lead Plaintiff and The Rosen Law Firm, P.A. as Lead Counsel. Dkt. No. 34. On June 27, 2022, Plaintiffs Matthews and Melendez filed the operative Consolidated Amended Complaint for Violations of the Federal Securities Laws ("Complaint"). Dkt. No. 36.

Shortly after Plaintiffs filed their Complaint, the Parties engaged Michelle Yoshida of Phillips ADR to mediate settlement negotiations. Ms. Yoshida is a well-respected mediator with substantial experience mediating securities class actions. Prior to the mediation, the Parties exchanged detailed mediation statements and replies. The Parties attended an all-day mediation on August 9, 2022 with Ms. Yoshida. The mediation was successful and on August 10, 2022, the Parties executed a binding Term Sheet that set forth the material terms and obligations with respect to the settlement, subject to the completion of informal discovery to confirm the adequacy of the

Settlement. On September 23, 2022, the Settlement was confirmed, after completing the informal discovery, pursuant to the terms of the Stipulation.

Plaintiffs moved for preliminary approval of the Settlement on September 23, 2022. Dkt. No. 54. The Court entered the Preliminary Approval Order on November 8, 2022, granting preliminary approval and directing the Claims Administrator to issue notice of the Settlement to Settlement Class Members. Dkt. No. 61.

## III. CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED

The Court preliminarily certified the Settlement Class for settlement purposes in its Preliminary Approval Order. Dkt. No. 61 at 6. As detailed in Plaintiffs' brief in support of preliminary approval of the Settlement, Dkt. No. 55 at 4-10, certification of the Settlement Class under Rule 23 is merited here.

The Court thoroughly analyzed each element of Rule 23(a) and (b)(3) in the Preliminary Approval Order. Dkt. No. 61 at 2-6. No pertinent changes have transpired since the Court issued the Preliminary Approval Order that would upset or alter the Court's findings. Thus, the Court should grant final certification of the Settlement Class for settlement purposes.

## IV. THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23 requires judicial approval of class action settlements. Fed. R. Civ. P. 23(e). It is within the "sound discretion of the district courts to appraise the reasonableness of [] settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986). The Ninth Circuit strongly favors settlement "particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits").

Federal Rule of Civil Procedure 23(e)(2) provides that, to determine if a settlement is fair, reasonable, and adequate, the Court must consider whether:

(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and  appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Ultimately, "[a] settlement should be approved if 'it is fundamentally fair, adequate and reasonable.'" *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (same). In evaluating whether settlements are fair, reasonable, and adequate, courts in the Ninth Circuit consider the following factors, some of which overlap with the requirements of Rule 23(e)(2): "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a government participant[2]; and the reaction of the class members to the proposed settlement." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) ((citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Keeping in mind that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements," courts should not convert settlement approval into an inquiry on the merits. *Officers for Just. v. Civ. Serv.*

---

[2] There was no government participant here, only a news article citing sealed filings from court records regarding the early stages of governmental investigations, so this factor is neutral. *See Tom v. Com Dev USA, LLC*, No. 16CV1363PSGGJSX, 2017 WL 10378629, at *5 (C.D. Cal. Dec. 4, 2017).

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:22-cv-01820-MCS-RAO

*Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Here, the
Rule 23(e) and Ninth Circuit factors weigh in favor of final approval.

### A.    The Overall Strength of Plaintiffs' Case, Including the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Final Approval of the Settlement

The expense, complexity, and possible duration of the litigation are key factors
in evaluating the reasonableness of a settlement. *Torrisi*, 8 F.3d at 1375–76 (finding
that "the cost, complexity and time of fully litigating the case" supported approval). A
settlement's "elimination of risk, delay, and further expenses weighs in favor of
approval." *Salazar v. Midwest Servicing Grp., Inc.*, No. 17-CV-0137-PSG-KS, 2018
WL 3031503, at *6 (C.D. Cal. June 4, 2018). Courts favor settlement where the case is
"complex and likely to be expensive and lengthy to try" and presents material risks
beyond the "inherent risks of litigation." *Low v. Trump Univ., LLC*, 246 F. Supp. 3d
1295, 1301 (S.D. Cal. 2017). Securities actions are complex and their outcomes
uncertain. *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at
*13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th
Cir. 2020). Lead Counsel and Plaintiffs carefully evaluated the merits of this case in
light of the risks and potential weaknesses before entering into the Settlement.

While Plaintiffs believe that their case is strong, they remain cognizant of the
substantial risk posed to the Settlement Class in continuing to litigate this action. *See
In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *7 (C.D. Cal.
June 10, 2005) ("It is known from past experience that no matter how confident one
may be of the outcome of litigation, such confidence is often misplaced"); *see also In
re Sumitomo Copper Litig.*, 189 F.R.D. 274, 282 (S.D.N.Y. 1999) (discussing several
instances where settlement was rejected by a court only to have the class's ultimate
recovery be less than the proposed settlement).

### 1.    Plaintiffs Faced the Risk of Dismissal

Securities class action plaintiffs face myriad procedural hurdles. Failing at any one stage of the litigation could defeat the class action. While motions to dismiss the Complaint had not yet been filed at the time of the Settlement, Defendants likely would have asserted challenges to falsity, scienter (as to the individual Defendants other than Wiederhorn), and loss causation. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005) (the elements of a Rule 10b-5 claim are falsity, materiality, scienter, reliance, loss causation and damages). To plead scienter, Plaintiffs must allege that Defendants made false statements "intentionally or with deliberate recklessness." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). Scienter in particular is a difficult element to prove. *In re LJ Int'l, Inc. Sec. Litig.*, No. CV0706076GAFJWJX, 2009 WL 10669955, at *3 (C.D. Cal. Oct. 19, 2009). Here, Plaintiffs faced a difficult burden to prove scienter of the individual Defendants other than Wiederhorn, as the alleged fraud was closely tied to Wiederhorn's personal interests. Loss causation would also present difficulties as some of the alleged facts had been previously disclosed to varying extents, and the corrective disclosure was based on reports and allegations from an investigation rather than a finding of wrongdoing.

While Plaintiffs believe their arguments opposing an anticipated motion to dismiss are strong, there is no guarantee they would prevail before the Court. The Private Securities Litigation Reform Act of 1995 ("PSLRA") imposes heightened pleading burdens on securities fraud plaintiffs that are "not [] easy [] to comply with." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

### 2.    Plaintiffs Faced the Risks of Obtaining Class Certification and Maintaining Class Action Status Through Trial

Even if Plaintiffs defeated the anticipated motions to dismiss, they would still need to undertake the complex and expensive task of obtaining certification of the putative class. One of the more difficult elements of class certification to satisfy is showing that class-wide issues, such as reliance on Defendants' misrepresentations,

predominate over individualized issues. Pursuant to *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), to show their entitlement to the presumption of class-wide reliance, Plaintiffs would need to prove that each of the four subclasses of FAT Brands securities traded in an efficient market during the Class Period, such that new, material information was rapidly incorporated into the price of the securities.

To satisfy the *Basic* presumption, Plaintiffs would need to hire an expert economist to conduct an event study showing the price reaction of FAT Brands securities to new, material information, prepare a report, and testify at a deposition on the issue of market efficiency. Such well-qualified experts are expensive. Rosen Decl. ¶32. Defendants would likely contest the efficiency of the market for FAT Brands securities, particularly with respect to the more thinly traded securities like Class B common stock, preferred stock, and warrants, and whether the fraud impacted the price of FAT Brands securities. Defendants would present their own expert report and testimony to oppose class certification. In addition to briefing the certification motion, Plaintiffs would need to produce and review documents, sit for depositions, and take the opposing expert's deposition.

Even if Plaintiffs obtained class certification, they faced a risk that they would not be able to sustain class certification through judgment. Rule 23(c)(1) expressly provides that a class certification order may be "altered or amended before final judgment." A class is not safely certified until judgment. *Omnivision*, 559 F. Supp. 2d at 1041 ("there is no guarantee the [class] certification would survive through trial, as Defendants might have sought decertification or modification of the class"). While rare, a change in the law or facts might upset certification. Thus, the necessity of complex and costly class certification proceedings together with the risk this Court may have denied certification, supports the Settlement's adequacy.

### 3. Plaintiffs Faced Additional Risks of Continued Litigation

Even if Plaintiffs overcame these substantial hurdles, there is no question that further litigation would be risky, complex, and expensive. First, Plaintiffs would need

to engage in formal fact discovery, requiring review of thousands of documents covering a nearly five-year class period, and taking depositions of Defendants, FAT Brands employees, and non-parties. Rosen Decl. ¶34. Discovery in this case would be further complicated by the existence of concurrent federal criminal and civil investigations, which might affect the availability of key witnesses or raise complex privilege or Fifth Amendment issues. *Id*. After the close of fact discovery, the Parties would engage in expert discovery on the questions of loss causation and damages, as well as other areas such as the application of accounting standards. Defendants would likely present their own expert testimony to demonstrate that the revelation of the fraud did not cause the alleged stock drops, and/or attempt to demonstrate that at least a portion of the alleged stock drops were attributable to other issues unrelated to the revelation of the fraud. *Id.* ¶32. All told, expert discovery and trial preparation would prove expensive and complex. *See Heritage Bond*, 2005 WL 1594403, at *6.

Even if Plaintiffs prevailed on class certification, Plaintiffs might lose on summary judgment. *See, e.g., In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (affirming summary judgment in favor of defendants where plaintiff failed to establish a triable issue on loss causation); *In re NeoPharm, Inc. Sec. Litig.*, 705 F. Supp. 2d 946, 966 (N.D. Ill. 2010) (granting partial summary judgment where plaintiffs failed to prove falsity or scienter). Plaintiffs may have an expert excluded, damaging their case. *See, e.g., In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 254 (S.D.N.Y. 2014), *aff'd sub nom. Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016).

Plaintiffs might also lose at trial, or the jury might reduce damages significantly. *See* Puma Biotechnology – Both Sides Claim Victory in Rare Jury Trial Verdict (reporting that according to defendants, plaintiffs won only 5% of the damages they requested).[3] Plaintiffs might still lose their case even after winning at trial. *In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605, at *38 (S.D. Fla.

---

[3] *Available at* https://www.issgovernance.com/puma-biotechnology-both-sides-claim-victory-in-rare-jury-trial-verdict/

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:22-cv-01820-MCS-RAO

Apr. 25, 2011), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (granting motion for judgment as a matter of law against plaintiffs after partial jury verdict in their favor). Even if Plaintiffs survive summary judgment and motions to exclude their experts, win at trial, secure a verdict for damages, and then defend the verdict from Defendants' inevitable post-trial motions, Plaintiffs might still lose on appeal. *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (overturning $81 million jury verdict).

Accordingly, the likely duration and expense of further litigation also supports a finding that the Settlement is fair, reasonable, and adequate. *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results").

**B.    The Amount Obtained in Settlement Supports Final Approval**

The determination of a reasonable settlement is not susceptible to a mathematical equation yielding a particularized sum. Nor is the proposed Settlement "to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. As "[s]ettlement is the offspring of compromise[,] the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624. Common sense dictates that Plaintiffs must take less in a settlement than they would after a complete trial victory or Defendants would have no reason to settle. In a factually and legally complex securities class action lawsuit such as this, this is no guarantee that Plaintiffs could secure or enforce a judgment at or near the full amount of the class-wide damages they estimate. Indeed, the Ninth Circuit has found that a settlement may be acceptable even if it amounts to only a fraction of the

potential recovery that might be available at trial. *Id.* at 628; *Mego*, 213 F.3d at 459. Further, Courts in this District have approved similarly structured settlements of consideration comprised of cash and stock. *See Romero, et al., v. Growlife, Inc., et al.*, Case No. 2:14-cv-03015-CAS-JEM (Dkt. No. 56).

Moreover, estimating aggregate damages can be challenging due to, among other things, assumptions that must be made regarding trading activity. The estimated damages would be reduced or eliminated entirely if some of the subclasses of securities were not certified, or if the Court or jury were to accept some or all of Defendants' defenses, including that a portion or all of the losses are attributable to causes other than the alleged misstatements or omissions, or that certain statements are not actionable. Even if Plaintiffs prevailed on loss causation at trial, a jury verdict could be reversed due to problems with loss causation. *See e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.,* 688 F.3d 713, 716 (11th Cir. 2012) (reversing plaintiffs' jury verdict for failure to prove loss causation). In arriving at this Settlement, Plaintiffs carefully considered the significant risk that it would be unable to recover a greater amount further down the road.

This Action posed an additional practical obstacle for Plaintiffs to obtain a greater settlement as Defendants' insurer has disclaimed coverage entirely. Rosen Decl. ¶29. Insurance policies are typically the main source for funding a judgment or settlement, and Plaintiffs faced the prospect of securing funds from Defendants' own pockets. Continuing to litigate the Action would have depleted the Company's already limited cash reserves and may have resulted in a smaller recovery, or none at all. Moreover, Defendants were facing concurrent liability from other lawsuits including a derivative shareholder action, *Harris v. Junger*, No. 2021-0511-SG (Del. Ch.) ("*Harris* Action"), as well as concurrent criminal and civil investigations by the Department of Justice and the Securities Exchange Commission. Rosen Decl. ¶29. The Company was also burdened with a substantial preexisting debt load, as alleged in the Complaint, which increased the chances that the Company would file for bankruptcy. *See Torrisi*,

8 F.3d at 1376 (district court acted within its discretion when finding the company's financial condition supported the adequacy of a settlement).

The Settlement provides a substantial benefit for Settlement Class Members. The Settlement recovers roughly 31% of Plaintiffs' maximum estimated class-wide damages. This recovery is reasonable and compares favorably with typical recoveries in other securities class actions. *See Omnivision*, 559 F. Supp. 2d at 1042 (approving 9% recovery); *In re Regulus Therapeutics Inc. Sec. Litig.*, No. 3:17-CV-182-BTM-RBB, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving 1.99% recovery); *Heritage Bond*, 2005 WL 1594403, at *8-*9 (average recovery between 2% to 3% of maximum damages); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162–63 (S.D.N.Y. 2011) ("the average settlement in securities class actions ranges from 3% to 7% of the class's total estimated losses"). According to Cornerstone Research, approximately 36% of securities class actions settled for less than $5 million in 2021.[4] The median recovery in cases such as this one alleging Rule 10b-5 claims with damages under $25 million was approximately 12.5% of estimated damages in 2021, and 18.2% between 2012-2020. *Id.* at 6. Between 2017-2021, securities class actions that settled before motions to dismiss were filed recovered a median of $3 million and 9.8% of estimated damages. *Id.* at 14. Thus, the amount of the Settlement shows it is a reasonable and adequate result.

## C. The Extent of Discovery Completed and the Stage of the Proceedings Support Final Approval

Courts also consider the stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case in determining the fairness, reasonableness, and adequacy of a settlement. *Mego*, 213 F.3d

---

[4] Laarni T. Bulan, *et al.*, Securities Class Action Settlements: 2021 Review and Analysis (Cornerstone Research), at 4, 6, and 14 *available* at https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf

at 458. Importantly, "in the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Id.* at 459. Instead, "courts look for indications that the parties carefully investigated the claims before reaching a resolution." *In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2016 WL 6248426, at *13 (N.D. Cal. Oct. 25, 2016).

During the PSLRA-mandated discovery stay, Lead Counsel reviewed FAT Brands' public filings and statements during the Class Period and other publicly available news reports as well as retained an investigator to interview former FAT Brands employees and third parties. Rosen Decl. ¶39. Although formal discovery had not commenced at the time of Settlement, Lead Counsel reviewed and incorporated into the Complaint the pleadings and filings in the *Harris* Action (a case with substantial factual overlap with this Action), including an amended complaint filed after a review of documents from shareholders' books and records request, which survived a motion to dismiss. *Id.*

Defendants also agreed to produce documents for Plaintiffs' review to confirm the adequacy and reasonableness of the settlement, providing Plaintiffs with further insight into the strengths of their claims and Defendants' likely defenses. Prior to executing the Stipulation, Defendants produced and Plaintiffs reviewed over 50,000 documents, including documents produced in the *Harris* Action and additional documents pertinent to Plaintiffs' unique claims. By reviewing the documents produced in informal discovery, reviewing the *Harris* Action's amended complaint, and engaging in their own comprehensive investigation, Lead Counsel and Plaintiffs were able to make an informed assessment of the claims asserted in this Action.

Through their investigation, as well as their review of Defendants' mediation statement, Lead Counsel determined the scope and strength of the claims Plaintiffs could bring on behalf of the putative class, and the corresponding misrepresentations and/or omissions. *Id.* Through these efforts, Plaintiffs and Lead Counsel gained

sufficient information to evaluate Settlement before additional time and resources were expended on further litigation. *Id.* Courts regularly find this factor to support approval of a settlement even when plaintiffs settle before a decision on the motion to dismiss or for class certification, or before any discovery. *See, e.g., Mego*, 213 F.3d at 459 (finding that even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (approving settlement after the filing of a motion to dismiss and prior to significant discovery); *Rieckborn v. Velti PLC*, No. 13-CV-03889-WHO, 2015 WL 468329, at *6 (N.D. Cal. Feb. 3, 2015) (approving settlement before decision on motion to dismiss); *Perez v. IZEA, Inc.*, No. 18-cv-02784-SVW-GJS (C.D. Cal. Sept. 26, 2019) (Dkt. No. 50) (approving settlement before filing of amended complaint); *In re GTT Comnc'ns, Inc. Sec. Litig.*, No. 2:21-CV-00270-DOC-AS (C.D. Cal. Mar. 22, 2022) (Dkt. No. 65) (approving settlement before motions to dismiss). For this reason, courts have commended class counsel for recognizing when, as was the case here, a prompt resolution of the matter is in the best interest of the class. *See Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *15 (N.D. Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for the class members by settling the instant action promptly"), *aff'd*, 331 F. Appx. 452, 457 (9th Cir. 2009).

Here, at the time of Settlement, Plaintiffs and Lead Counsel had acquired "fulsome understandings" of the parties' respective positions on the legal and factual issues in the case. *In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (investigation provided sufficient understanding of merits even though the PSLRA precluded discovery). Plaintiffs and Lead Counsel were sufficiently informed at this stage of the litigation to negotiate a reasonable Settlement, supporting final approval.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:22-cv-01820-MCS-RAO

**D.    The Proposed Settlement Resulted from Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel**

Courts presume that a proposed settlement is fair and reasonable when it results from arm's-length negotiations. *See In re Portal Software, Inc. Sec. Litig.*, No. C 03 5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007); *Riker v. Gibbons*, No. 3:08-CV-00115-LRH, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining"). Here, Plaintiffs reached the Settlement after arm's-length negotiations facilitated by an experienced mediator, Michelle Yoshida of Phillips ADR. *Satchell v. Fed. Express Corp.*, No. C 03 2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Ms. Yoshida has considerable experience mediating complex, securities class actions. Prior to the mediation, the Parties exchanged mediation statements and replies which included, among other things, their respective views on the merits of the Action, damages, and available sources of funding for a potential settlement or judgment. With Ms. Yoshida's guidance, the Parties were able to come to terms at the mediation session, reaching an agreement in principle that was documented with a term sheet the following day. Rosen Decl., ¶16. Ms. Yoshida's participation in the Settlement underscores that it is the product of non-collusive, arm's-length negotiations. *Todd v. STAAR Surgical Co.*, No. CV 14-5263 MWF (GJSx), 2017 WL 4877417, at *2 (C.D. Cal. Oct. 24, 2017) (that the parties reached a settlement as a result of mediation with Ms. Yoshida weighs in favor of approval).

In addition to the non-collusive, vigorous settlement negotiations, counsel on both sides of this Action are experienced and knowledgeable when it comes to litigating complex, securities class actions. "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.

1  1995); *Heritage Bond*, 2005 WL 1594403, at *9 (in a complex class action, counsel is
2  "most closely acquainted with the facts of the underlying litigation"). "Absent fraud,
3  collusion, or the like," the Court should give "[g]reat weight [] to the recommendation
4  of counsel, who are most closely acquainted with the facts of the underlying litigation,"
5  *Heritage Bond*, 2005 WL 1594403, at *9; *DIRECTV*, 221 F.R.D. at 528.

6      Rosen Law's experience and reputation allowed it to leverage the credible threat
7  of further litigation and trial, but also to recognize that the Settlement was a better
8  option for the Settlement Class. Courts in this District, as well as others, have
9  recognized that Rosen Law "has the necessary skill and knowledge to effectively
10 prosecute" securities class actions. *Pace v. Quintanilla*, No. SACV 14-2067-DOC,
11 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014); *Knox v. Yingli Green Energy*
12 *Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm
13 is 'highly qualified [and] experienced' in securities class actions"); *Christine Asia Co.*
14 *v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16,
15 2019), *appeal withdrawn sub nom. Tan Chao v. William*, No. 19-3823, 2020 WL
16 763277 (2d Cir. Jan. 2, 2020) (finding in approving the largest ever settlement in a case
17 brought by investors in a Chinese company that "the quality of representation by both
18 [Rosen] and Defendants' counsel was high in this case."). *See also*, Ex. E to Rosen Fee
19 Decl. Additional counsel, Pomerantz LLP, also has substantial experience litigating
20 securities class actions on behalf of investors. Ex. E to Declaration of Brenda Szydlo
21 on Behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses. Thus,
22 Plaintiffs' Counsel's experience supports approval. Likewise, Defense Counsel,
23 Sheppard, Mullin, Richter & Hampton LLP and Mintz, Levin, Cohn, Ferris, Glovsky
24 and Popeo, P.C., are preeminent firms with skilled securities litigation practitioners,
25 who vigorously represented their clients and were equally knowledgeable about the
26 merits of the case.

27     Finally, Plaintiffs' support for the Settlement is further evidence that the
28 Settlement is fair, reasonable and adequate. *See* Rosen Decl., Exs. 4-5 (Plaintiffs'

declarations). Plaintiffs' support for a settlement should be accorded "special weight because [the plaintiff] may have a better understanding of the case than most members of the class." *DIRECTV*, 221 F.R.D. at 528 (quoting Manual for Complex Litigation (Third) § 30.44 (1995)). The protracted arms' length negotiations and the support of both experienced counsel and Plaintiffs favors final approval of the Settlement.

### E.    The Favorable Reaction of the Settlement Class Supports Approval

The absence of objections to a proposed class action settlement supports approval. *Omnivision*, 559 F. Supp. 2d at 1043; *In re Rambus Inc. Derivative Litig.*, No. C 06-3513 JF (HRL), 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members").

To date, 54,230 potential Settlement Class Members were notified of the Settlement by mailed Postcard Notice or by emailed link to the Long Notice and Claim Form. Bravata Decl. ¶8. The Claims Administrator caused 31,909 copies of the Postcard Notice to be mailed to potential Settlement Class Members. Bravata Decl. ¶¶5-6. A nominee also informed the Claims Administrator that they had emailed 22,320 customers to notify them of the Settlement, including links to the Long Notice and Claim Form on the settlement website and SCS sent a link to the Long Notice and Claim Form. *Id.* ¶7. The deadline to file objections is February 7, 2023. To date, no Settlement Class Members have objected to the Settlement. *Id.* ¶15; Rosen Decl. ¶54. Plaintiffs will respond to any subsequent duly lodged objections, if any, in their reply.

The Claims Administrator did not receive any valid requests for exclusion. Bravata Decl., ¶14. One invalid request under the Preliminary Approval Order was submitted by an individual who did not provide any information regarding his transactions in FAT Brands. Another individual contacted SCS to learn more about the exclusion process. To date, however, neither individual has submitted a valid request for exclusion. Bravata Decl., ¶14, Ex. E; Rosen Decl. ¶55. That no request for exclusion

were received supports the Settlement's approval. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 0.56% of eligible class members requesting exclusion); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("overwhelming positive reaction of the class members" including 16 exclusion request representing 4.86% of class supports settlements' approval.); *Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *14 (N.D. Cal. Feb. 11, 2016) (16 valid exclusion requests representing 0.176% of public shares, supported settlement approval); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-00302 MRP, 2013 WL 6577020, at *16 (C.D. Cal. Dec. 5, 2013) (69 exclusion requests in response to mailing of over 50,000 notices supports settlement).

"[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027. The absence of any objections and exclusion requests supports final approval.

### F.    The Settlement Meets the Remaining Rule 23(e)(2) Factors

#### 1.    The Proposed Method for Distributing Relief Is Effective

Rule 23 requires that the Court consider the effectiveness of the proposed method of distributing relief to the class, including the method of processing claims. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Preliminary Approval Order established a plan to provide notice to potential Settlement Class Members, which Plaintiffs and the Claims Administrator duly executed. As the Court directed in the Preliminary Approval Order, the Claims Administrator mailed a Postcard Notice to all those who could be identified with reasonable effort, emailed and cause to be emailed links to the Long Notice and Claim Form, and published the Summary Notice on *GlobeNewswire* and in *Investor's Business Daily*. Bravata Decl. ¶¶2-11. The Postcard notified Settlement Class Members of the Settlement and directed them to a case-specific website where the Claims

Administrator posted key documents including the Stipulation, Long Notice, Claim Form, and Preliminary Approval Order. *Id.* ¶¶3, 13, and Exhibit A.

Settlement Class Members are to complete a standard claim form that requests the information necessary to calculate claims pursuant to the Plan. The case-specific website also allowed Settlement Class Members to file their claims electronically.

### 2.    The Proposed Award of Attorneys' Fees is Appropriate

Rule 23 also addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed in the Fee Brief, Lead Counsel seek an award of attorneys' fees of 25% of the Settlement Amount, plus interest, and expenses of $45,000. This fee request, fully disclosed in the Postcard Notice, Summary Notice, and Long Notice, is consistent with awards granted in similar actions in the Ninth Circuit. *See* Fee Brief, Section III(C)(5).

Plaintiffs also request $1,500 each pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(4), in connection with their representation of the Settlement Class. Plaintiffs supervised and engaged with Plaintiffs' Counsel during litigation and throughout settlement negotiations, and kept abreast of developments in this case and with FAT Brands generally. Plaintiffs spent significant time representing the Settlement Class. Rosen Decl., Exs. 4-5 (Plaintiffs' declarations) ¶61. Plaintiffs' request for compensation is appropriate, as courts regularly grant similar awards to representative plaintiffs. *See* Fee Brief, Section V.

### 3.    The Parties Have No Other Agreements Besides Opt-Outs

Rule 23 requires that any agreement made in connection with the proposed Settlement be disclosed. Fed. R. Civ. P. 23(e)(2)(C)(iv). As previously disclosed in the Stipulation (¶10.3) and in Plaintiffs' brief in support of preliminary approval (Dkt. No. 55 at 17-18), the Parties entered into a Supplemental Agreement that gives FAT Brands the right to terminate the Settlement if Settlement Class Members holding more than a certain number of shares opt out. Only the agreement's exact terms—specifically, the number of shares that trigger the right to terminate—has not been disclosed to

Settlement Class Members.[5] This Supplemental Agreement poses no obstacle to final approval of the Settlement. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."). FAT Brands did not exercise its termination option.

### 4.    There is No Preferential Treatment; the Proposed Plan of Allocation Treats Class Members Equitably

Rule 23 requires courts to evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). The Plan determines how the money is distributed to Authorized Claimants. The Settlement Fund is distributed *pro rata* to each Settlement Class member who submits a valid claim based on their recognized losses resulting from the stock price declines during the Settlement Class Period, as alleged in the Complaint. Lead Counsel developed the Plan in consultation with Plaintiffs' damages expert, and the Plan closely tracks the theory of the case. Rosen Decl. ¶25. The Plan will determine Plaintiffs' recovery just like every other Settlement Class Member, so Plaintiffs receive no preferential treatment.

### G.    The Court Should Approve the Plan of Allocation

In the Preliminary Approval Order, the Court preliminarily approved the Plan, which was detailed in the Long Notice. Plaintiffs now request that the Court grant final approval of the Plan for the purpose of administering the Settlement. Courts assess plans of allocation by the same metric as settlements as a whole: they must be "fair, reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. Practically speaking, "[a]n allocation formula need only have a reasonable, rational basis, particularly if

---

[5] Per the Court's instruction in the Preliminary Approval Order, Dkt. No. 61 at 8, Lead Counsel submitted the Supplemental Agreement to the Court for *in camera* review on November 9, 2022. Rosen Decl. ¶13.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:22-cv-01820-MCS-RAO

1    recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec.*
2    *Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).

3        The proposed Plan has a reasonable, rational basis. It distributes the settlement
4 proceeds on a *pro rata* basis, calculating a claimant's relative loss proximately caused
5 by Defendants' alleged misrepresentations and omissions, based on factors such as
6 when and at what prices the claimant purchased and sold FAT Brands securities.
7 Plaintiffs engaged a damages consultant to assist in developing a plan to allocate the
8 Settlement proceeds among Claimants with the goal of reimbursing Settlement Class
9 Members in a fair and reasonable manner. Rosen Decl. ¶¶25-27. *See Riker*, 2010 WL
10 4366012, at *5 ("Class counsel has consistently consulted with experts throughout this
11 litigation, and based on these consultations, has determined that the terms agreed upon
12 in the settlement represent a fair, adequate, and reasonable settlement of plaintiffs'
13 claims").

14        Because they tend to mirror the complaint's allegations in securities class
15 actions, "plans that allocate money depending on the timing of purchases and sales of
16 the securities at issue are common." *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525
17 (GEB), 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007); *see also In re Gen. Instrument*
18 *Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (finding plan of allocation was
19 "even handed" where "claimants are to be reimbursed on a *pro rata* basis for their
20 recognized losses based largely on when they bought and sold their shares"). Here,
21 each authorized claimant will receive a *pro rata* share of the Net Settlement Fund based
22 on the claimant's recognized loss as calculated in accordance with the Plan. Rosen
23 Decl. ¶26. There have been no objections to the Plan from any potential Settlement
24 Class Members. Bravata Decl. ¶15; Rosen Decl. ¶54. The Plan fairly compensates
25 Settlement Class Members and should be approved.

26 **V.**      **NOTICE TO THE SETTLEMENT CLASS SATISFIED DUE PROCESS**

27        Plaintiffs provided the Settlement Class with adequate notice of the Settlement,
28 in the manner and form that the Court preliminarily approved. There were 54,230

Settlement Class Members notified about the Settlement. Bravata Decl., ¶8. Of this, there were 31,909 Postcard Notices mailed and 22,321 emailed linked to the Long Notice and Claim Form. *Id.*, ¶¶6-8. The Claims Administrator also published the Court-approved Summary Notice online in *GlobeNewswire* and in print in *Investor's Business Daily* on December 12, 2022. *Id.* ¶11. The Claims Administrator also published all information regarding the Settlement online on the Settlement website. *Id.* ¶12. The notice plan executed here directed notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1)(B).

The Notice provides all necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. It "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009). The Notice gave Settlement Class Members all the information they needed to decide whether to opt out, object, or file a claim. It told Settlement Class Members, among other things: (1) the amount of the Settlement; (2) why the parties propose the Settlement; (3) the estimated average recovery per damaged share; (4) the maximum amount of attorneys' fees and expenses that Lead Counsel would seek; (5) Lead Counsel's contact information; (6) that Settlement Class Members could object to the Settlement or exclude themselves from the Settlement Class, and the consequences thereof; and (7) the dates and deadlines for certain Settlement-related events. 15 U.S.C. § 78u-4(a)(7). The Notice further explained that the Net Settlement Fund would be distributed to eligible Settlement Class Members who submit valid and timely claim forms under the Plan as described in the Notice.

In sum, the Notice fairly apprised Settlement Class Members of their rights, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, the PSLRA, and due process. *See, e.g.*, *Baker v. SeaWorld Ent., Inc.*, No. 14CV2129-MMA (AGS), 2020 WL 818893, at *2–*3 (S.D. Cal. Feb. 19, 2020); *In re Immune Response Sec. Litig.*,

497 F. Supp. 2d 1166, 1170 (S.D. Cal. 2007); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *1 (N.D. Cal. Nov. 26, 2007) (approving similar notice program).

## VI.    CONCLUSION

For the foregoing reasons, the Court should: (a) finally certify the Settlement Class; (b) find that the notice plan complied with all applicable requirements; and (c) approve the Settlement and Plan as fair, reasonable, and adequate.

Dated: January 31, 2023                **THE ROSEN LAW FIRM, P.A.**

*/s/Laurence M. Rosen*
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Phillip Kim (*pro hac vice* pending)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com

Joshua Baker (*pro hac vice*)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
Email: jbaker@rosenlegal.com

*Lead Counsel for Plaintiffs*

**POMERANTZ LLP**
Jeremy Lieberman (*pro hac vice*)

Brenda Szydlo (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (646) 581-9996
Email: jlieberman@pomlaw.com
Email: bszydlo@pomlaw.com

**BRONSTEIN, GERWITZ &
GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

*Additional Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

I am the managing attorney of The Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071. I am over the age of eighteen.

On January 31, 2023, I electronically filed the foregoing MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on January 31, 2023.

*/s/Laurence M. Rosen*

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:22-cv-01820-MCS-RAO