Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiffs*

[*additional counsel on signature page*]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br><br>FAT BRANDS INC.<br>SECURITIES LITIGATION | Case No. 2:22-cv-01820-MCS-RAO<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD TO PLAINTIFFS**<br><br>CLASS ACTION<br><br>Date: February 28, 2023<br>Time: 9:00 a.m.<br>Courtroom: 7C<br>Judge: Hon. Mark C. Scarsi |

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  CASE BACKGROUND ........................................................................................3

III. THE COURT SHOULD AWARD ATTORNEYS' FEES OF 25% OF THE SETTLEMENT FUND ...........................................................................................3

   A. Lead Counsel Are Entitled to a Fee Award from the Common Fund They Secured for the Settlement Class ...................................................................3

   B. The Court Should Award Lead Counsel a Reasonable Percentage of the Common Fund ................................................................................................4

   C. The Requested Attorneys' Fees are Reasonable and Merited ........................5

      1. Plaintiffs' Counsel Achieved a Fair, Reasonable, and Adequate Result for the Settlement Class .................................................................5

      2. The Risks and Complexity of the Litigation Support the Requested Fee Amount ....................................................................................................7

      3. Lead Counsel Skillfully Managed This Case Against Formidable Adversaries .............................................................................................9

      4. Plaintiffs' Counsel Undertook a Significant Financial Risk...................10

      5. Fee Awards Granted in Similar Cases Further Support an Award of 25% of the Settlement Fund ........................................................................11

      6. An Informal Lodestar Crosscheck Confirms the Reasonableness of the Requested Fee Award ...........................................................................14

      7. The Settlement Class's Reaction Supports the Requested Fee...............16

IV.  PLAINTIFFS' COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY TO ACHIEVE THE BENEFIT OBTAINED..............................18

i

V.  THE COURT SHOULD APPROVE THE AWARD TO PLAINTIFFS ............19

VI. CONCLUSION ..................................................................................20

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:22-cv-01820-MCS-RAO

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ...................................................................................7

*Atlas v. Accredited Home Lenders Holding Co.*,
No. 07-CV-00488-H (CAB), 2009 WL 3698393 (S.D. Cal. Nov. 4, 2009) ............5

*Barbosa v. Cargill Meat Sols. Corp.*,
297 F.R.D. 431 (E.D. Cal. 2013) ...........................................................................13

*Blum v. Stenson*,
465 U.S. 886 (1984)...........................................................................................4, 13

*Boyd v. Bank of Am. Corp.*,
No. SACV 13-0561-DOC, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ...........13

*Brown v. China Integrated Energy Inc.*,
No. CV1102559BROPLAX, 2016 WL 11757878 (C.D. Cal. July 22, 2016) ........20

*Buccellato v. AT & T Operations, Inc.*,
No. C10-00463-LHK, 2011 WL 3348055 (N.D. Cal. June 30, 2011) ...................16

*Cheng Jiangchen v. Rentech, Inc.*,
No. CV 17-1490-GW(FFMX), 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019).........9

*Chun-Hoon v. McKee Foods Corp.*,
716 F. Supp. 2d 848 (N.D. Cal. 2010)...................................................................17

*City of Providence v. Aeropostale, Inc.*,
No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ..........11

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)..................................................................................................8

iii

*Dyer v. Wells Fargo Bank, N.A.*,
  303 F.R.D. 326 (N.D. Cal. 2014)..................................................................20

*Eminence Cap., LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ........................................................................2

*Feller v. Transamerica Life Ins. Co.*,
  No. 16CV01378CASGJSX, 2019 WL 6605886 (C.D. Cal. Feb. 6, 2019) ............16

*Fox v. Vice*,
  563 U.S. 826 (2011)......................................................................................14

*Glass v. UBS Fin. Servs., Inc.*,
  331 F. App'x 452 (9th Cir. 2009) ....................................................................5

*Gustafson v. Valley Ins. Co.*, No. CV,
  01-1575-BR, 2004 WL 2260605 (D. Or. Oct. 6, 2004) ..........................................13

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) .............................................................................18

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)........................................................................................5

*Hope Med. Enters., Inc. v. Fagrgon Compounding Serv., LLC*,
  No. 2:19-CV-07748-CAS (PLAx), 2022 WL 826903 (C.D. Cal. Mar. 14, 2022)..15

*Hopkins v. Stryker Sales Corp.*,
  No. 11-CV-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ....................16

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989)........................................................................4

*In re Am. Apparel, Inc. S'holder Litig..*,
  No. CV1006352MMMJCGX, 2014 WL 10212865 (C.D. Cal. July 28, 2014) .........
  ....................................................................................................9, 11, 14

*In re Apollo Grp. Inc. Sec. Litig.*,
  No. CV 04-2147-PHX-JAT, 2012 WL 1378677 (D. Ariz. Apr. 20, 2012)............14

*In re Audioeye, Inc., Sec. Litig.*,
    No. CV-15-00163-TUC-DCB, 2017 WL 5514690 (D. Ariz. May 8, 2017)...........12

*In re BP p.l.c. Sec. Litig.*,
    852 F. Supp. 2d 767 (S.D. Tex. 2012)........................................................................8

*In re Brooktree Sec. Litig.*,
    915 F. Supp. 193 (S.D. Cal. 1996)............................................................................4

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ..............7

*In re Genworth Fin. Sec. Litig.*,
    210 F. Supp. 3d 837 (E.D. Va. 2016) .....................................................................14

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) ..........................................................................6, 7

*In re Heritage Bond Litig.*,
    No. 02-ML-1475-DT(RCX), 2005 WL 1594389 (C.D. Cal. June 10, 2005)......7, 10

*In re Heritage Bond Litig.*,
    No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005).............*passim*

*In re HP Inkjet Printer Litig.*,
    716 F.3d 1173 (9th Cir. 2013) ..................................................................................6

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) .............................................................17, 18

*In re IsoRay, Inc. Sec. Litig.*,
    No. 4:15-CV-5046-LRS, 2017 WL 11461073 (E.D. Wash. Mar. 7, 2017) ............12

*In re LJ Int'l, Inc. Sec. Litig.*,
    No. CV0706076GAFJWJX, 2009 WL 10669955 (C.D. Cal. Oct. 19, 2009)...........8

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ..................................................................................12

*In re Nuvelo, Inc. Sec. Litig.*,
  No. C 07-04056 CRB, 2011 WL 2650592 (N.D. Cal. July 6, 2011) .....................12

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008).........................................................*passim*

*In re Pac. Enterprises Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ......................................................................7, 11

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ...................................................................5

*In re Sumitomo Copper Litig.*,
  189 F.R.D. 274 (S.D.N.Y. 1999) ...............................................................17

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
  535 F. Supp. 2d 249 (D.N.H. 2007)..........................................................14

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
  MDL No. 2672 CRB (JSC), 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ..........15

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) .................................................................*passim*

*Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*,
  No. 3:09-CV-00419-MMD, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) ...............6

*Jenson, v. First Tr. Corp.*,
  No. CV 05-3124 ABC (CTX), 2008 WL 11338161 (C.D. Cal. June 9, 2008).19, 20

*Johnson v. US Auto Parts Network, Inc.*,
  No. CV07-2030-GW(JCX), 2008 WL 11343481 (C.D. Cal. Oct. 9, 2008)..............7

*Katz v. China Century Dragon Media, Inc.*,
  No. LACV1102769JAKSSX, 2013 WL 11237202 (C.D. Cal. Oct. 10, 2013).13, 18

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
  136 F. Supp. 3d 1159 (C.D. Cal. 2015) .................................................9

*Lopez v. Youngblood*,
  No. CV-F-07-0474 DLB, 2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ................4

*Luna v. Marvell T*ech. Grp.,
  2018 WL 1900150 (N.D. Cal. Apr. 20, 2018)........................................................18

*Mauss v. NuVasive, Inc.*,
  No. 13CV2005 JM (JLB), 2018 WL 6421623 (S.D. Cal. Dec. 6, 2018) ...............12

*McPhail v. First Command Fin. Plan., Inc.*,
  No. 05CV179-IEGJMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ...................6

*Millan v. Cascade Water Servs., Inc.*,
  No. 112CV01821AWIEPG, 2016 WL 3077710 (E.D. Cal. May 31, 2016)...........13

*Morris v. Lifescan, Inc.*,
  54 F. App'x 663 (9th Cir. 2003)............................................................................12

*Ontiveros v. Zamora*,
  303 F.R.D. 356 (E.D. Cal. 2014) ..........................................................................17

*Pace v. Quintanilla*,
  No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) .............9

*Parkinson v. Hyundai Motor Am.*,
  796 F. Supp. 2d 1160 (C.D. Cal. 2010) .................................................................15

*Patel v. Axesstel, Inc.*,
  No. 3:14-CV-1037-CAB-BGS, 2015 WL 6458073 (S.D. Cal. Oct. 23, 2015).......12

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) ..................................................................................3

*Rausch v. Hartford Fin. Servs. Grp.*,
  No. 01-CV-1529-BR, 2007 WL 671334 (D. Or. Feb. 26, 2007) ..........................13

*Razilov v. Nationwide Mut. Ins. Co.*,
  No. 01-CV-1466-BR, 2006 WL 3312024 (D. Or. Nov. 13, 2006) ...................13, 20

*Redwen v. Sino Clean Energy, Inc.*,
  No. CV 11-3936 PA (SSX), 2013 WL 12303367 (C.D. Cal. July 9, 2013) ............7

*Robbins v. Koger Properties, Inc.*,
116 F.3d 1441 (11th Cir. 1997) ................................................................................. 10

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) .................................................................................... 19

*Romero v. Producers Dairy Foods, Inc.*,
No. 1:05CV0484 DLB, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) ................. 11

*Romero, et al., v. Growlife, Inc., et al.*,
Case No. 2:14-cv-03015-CAS-JEM ........................................................................ 12

*Sanders v. The RealReal, Inc.*,
No. 5:19-cv-773-EJD (N.D. Cal. July. 28, 2022) .................................................... 15

*Sawant v. Ramsey*,
No. 3:07-CV-980 VLB, 2012 WL 3265020 (D. Conn. Aug. 9, 2012) ................... 10

*Singer v. Becton Dickinson & Co.*,
No. 08-CV-821-IEG (BLM), 2010 WL 2196104 (S.D. Cal. June 1, 2010) ........... 12

*Spann v. J.C. Penney Corp.*,
211 F. Supp. 3d 1244 (C.D. Cal. 2016) ................................................................... 16

*Steiner v. Am. Broad. Co.*,
248 F. App'x 780 (9th Cir. 2007) ............................................................................ 16

*Szymborski v. Ormat Techs., Inc.*,
No. 3:10-CV-132-RCJ, 2012 WL 4960098 (D. Nev. Oct. 16, 2012) .................... 12

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007) .................................................................................................... 3

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
669 F.3d 632 (5th Cir. 2012) ...................................................................................... 5

*Vandervort v. Balboa Cap. Corp.*,
8 F. Supp. 3d 1200 (C.D. Cal. 2014) ....................................................................... 13

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:22-cv-01820-MCS-RAO

*Vincent v. Hughes Air W., Inc.*,
 557 F.2d 759 (9th Cir. 1977) ....................................................................................3

*Vinh Nguyen v. Radient Pharms. Corp.*,
 No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ..............9

*Vizcaino v. Microsoft Corp.*,
 290 F.3d 1043 (9th Cir. 2002) ........................................................4, 5, 7, 14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005) ........................................................................4

*Yedlowski v. Roka Bioscience, Inc.*,
 No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) ...............8

## **Statutes**

15 U.S.C. § 78u-4(a)(4) ..........................................................................19

15 U.S.C. § 78u-4(a)(6) ............................................................................4

## **Other Authorities**

H.R. Conf. Rep. No. 369...........................................................................19

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:22-cv-01820-MCS-RAO

Lead Plaintiff Robert J. Matthews and Plaintiff Michael Melendez (together, "Plaintiffs") submit this memorandum in support of their motion for an award of attorneys' fees, reimbursement of expenses, and award to Plaintiffs.

## I.    INTRODUCTION

The Parties reached a Settlement to resolve this Action for $3,000,000, comprised of $2,500,000 in cash and $500,000 in shares of FAT Brands Inc. ("FAT Brands") Class A common stock. Stipulation ¶1.34[1] The Settlement is a favorable result for the Settlement Class, as it recovers approximately 31% of the maximum estimated damages of $9.7 million under Plaintiffs' best-case scenario, as estimated by Plaintiffs' damages expert. Having achieved this substantial recovery for the Settlement Class despite facing significant obstacles and risks in this litigation, Lead Counsel seek an award of attorneys' fees of 25% of the Settlement Amount, or $625,000 of cash and $125,000 worth of FAT Brands Class A common stock, reimbursement of expenses incurred of $45,000, and an Award to Plaintiffs of $1,500 each, or $3,000 total, to be paid from the Settlement Fund.

Litigants who create a common fund for the benefit of a class are entitled to an award of attorneys' fees and reimbursement of expenses from the common fund. In the Ninth Circuit, courts typically determine attorneys' fees as a percentage of the common fund. The main factors courts consider in setting the percentage award are the quality of the result, the risk undertaken, and the reaction of the settlement class. Courts also

---

[1] Unless otherwise defined herein, capitalized terms take the same meaning provided in the Stipulation of Settlement, filed on September 23, 2022 ("Settlement" or "Stipulation") (Dkt. No. 56). Internal citations and quotations are omitted and emphasis is added unless otherwise noted. Citations to "Rosen Decl." are to the Declaration of Laurence M. Rosen, filed herewith. Citations to "Rosen Fee Decl." are to the Declaration of Laurence M. Rosen Concerning Attorneys' Fees and Expenses, attached as Exhibit 2 to the Rosen Decl. Citations to "Bravata Decl." are to the Declaration of Josephine Bravata, attached as Exhibit 1 to the Rosen Decl. Citations to "Final Approval Brief" are to the Memorandum of Points and Authorities in support of Plaintiffs' motion for final approval of the Settlement, filed herewith.

cross-check the award against the time and effort counsel expended. Here, each of these factors weighs in favor of awarding Lead Counsel attorneys' fees of 25% of the Settlement Amount.

The Parties reached the Settlement after informed, arm's-length negotiations with the aid of mediator Michelle Yoshida of Phillips ADR. This Settlement is a favorable result for Settlement Class Members in light of several obstacles Plaintiffs faced, including Defendants' anticipated motions to dismiss, the availability of evidence, Defendants' potential defenses, the risks of prosecuting this litigation through trial, and the real danger that Plaintiffs would not be able to obtain a larger sum if litigation were to continue, as there were no available insurance funds and the same Defendants were facing several other competing lawsuits, investigations, and liabilities.

In obtaining this result, Lead Counsel took on substantial risk. The Private Securities Litigation Reform Act of 1995 ("PSLRA") imposes several procedural obstacles to alleging securities fraud, and its pleading standards in particular are "not [] easy [] to comply with," *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Despite the risks entailed in this litigation, Lead Counsel was able to secure a favorable and prompt recovery for the Settlement Class.

The Settlement Class approves of Lead Counsel's work. Objections are not due until February 7, 2023, but to date no Settlement Class Member has objected to the Settlement or the fee request, as previewed in the notice sent to potential Settlement Class Members. There have been no valid requests for exclusion.

Lead Counsel also seeks reimbursement of out-of-pocket litigation expenses incurred in connection with the prosecution of this action in the amount of $45,000. These expenses, including court filings fees, expert fees, investigator fees, document hosting fees, mediation fees, travel expenses, and administrative expenses, were reasonable and necessary for the successful prosecution of the Action.

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:22-cv-01820-MCS-RAO

Finally, Plaintiffs seek an award of $1,500 each, or $3,000 total, for their time spent in carrying out their obligations in the Action. This request is reasonable in light of the time Plaintiffs spent in connection with this Action on behalf of the Settlement Class and is in line with awards granted in similar actions.

## II.   CASE BACKGROUND

A summary of Plaintiffs' allegations and the procedural history of this Action are set forth in the Final Approval Brief, section II.

## III.   THE COURT SHOULD AWARD ATTORNEYS' FEES OF 25% OF THE SETTLEMENT FUND

### A.   Lead Counsel Are Entitled to a Fee Award from the Common Fund They Secured for the Settlement Class

"[A] private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of this doctrine is to avoid unjust enrichment. "[T]hose who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*"). "The amount of such a reward is that which is deemed 'reasonable' under the circumstances." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).

Reasonable fee awards are necessary in securities class actions. The Supreme Court has "long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought [] by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007); *Halliburton Co. v. Erica P. John Fund, Inc.*, No. 13-317, Brief for the United States as Amicus Curiae Supporting Respondent, at 1-2. *Tellabs* and *Halliburton* were both class actions alleging securities fraud. Attorneys' fee awards were necessary to

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:22-cv-01820-MCS-RAO

provide incentives for private lawyers to file those actions, and an award is necessary and appropriate here for the same reasons.

### B.    The Court Should Award Lead Counsel a Reasonable Percentage of the Common Fund

Under the "common fund doctrine" a reasonable fee is based on "a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). Courts in the Ninth Circuit have discretion to award fees in common fund cases based on either the percentage-of-the-fund method  or the "lodestar/multiplier" method. *WPPSS*, 19 F.3d at 1295-96. "Despite this discretion, use of the percentage method in common fund cases appears to be dominant." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008).

Among other benefits, the percentage-of-the-fund method "aligns the interests of class counsel and the class, rather than rewarding attorneys for hours spent on cases, as the lodestar method does." *In re Brooktree Sec. Litig.*, 915 F. Supp. 193, 196 (S.D. Cal. 1996); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050, n.5 (9th Cir. 2002) (affirming 28% fee, representing 3.65 multiplier, disfavoring lodestar for incentivizing lawyers to generate more hours and not to settle early). The percentage method also "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005). The percentage method also preserves judicial resources by sidestepping time-consuming lodestar analysis while saving the Settlement Class from the delays necessitated by the Court's review. *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989); *Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 WL 10483569, at *4 (E.D. Cal. Sept. 2, 2011) ("the lodestar method is difficult to apply [and] time consuming to administer.").

Finally, the PSLRA provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. § 78u-4(a)(6). "Part of the reason

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:22-cv-01820-MCS-RAO

behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).

For these reasons the Court should award attorneys' fees based on the percentage-of-recovery method. The Court should use an informal lodestar cross-check only to assess the reasonableness of the percentage award. *See Vizcaino*, 290 F.3d at 1050, n.5 (using lodestar as "a cross-check on the reasonableness of a percentage figure"); *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456 (9th Cir. 2009) ("the district court properly performed an informal lodestar cross-check").

### C.   The Requested Attorneys' Fees are Reasonable and Merited

Factors that courts use to determine whether the requested percentage is fair and reasonable include: (1) the results achieved; (2) the risk and complexity of the litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; (6) awards made in similar cases; (7) the reaction of the class; and (8) the lodestar cross-check. *See Vizcaino*, 290 F.3d at 1047; *Omnivision*, 559 F. Supp. 2d at 1046. Of course, "[t]he relative degree of importance to be attached to any particular factor will depend upon ... the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Atlas v. Accredited Home Lenders Holding Co.*, No. 07-CV-00488-H (CAB), 2009 WL 3698393, at *3 (S.D. Cal. Nov. 4, 2009). Here, each of these factors supports awarding Lead Counsel attorneys' fees of 25% of the Settlement Amount.

### 1.   Plaintiffs' Counsel Achieved a Fair, Reasonable, and Adequate Result for the Settlement Class

Courts have consistently recognized that the ultimate result achieved is a major factor to be considered in making a fee award. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (finding the "most critical factor is the degree of success obtained");

*In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) (tethering fee award "to the value of the class recovery").

The Settlement value, totaling $3,000,000 plus interest, constitutes approximately 31% of Plaintiffs' maximum estimated damages of $9.7 million. This is a highly favorable result, particularly in light of the considerable risks of litigation presented here. As a percentage of the total estimated damages, the Settlement Amount is well-above the percentage of investor losses recovered in typical securities class action settlements. *Omnivision*, 559 F. Supp. 2d at 1042 (approving 6% recovery of maximum damages) (citing *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *8–9 (C.D. Cal. June 10, 2005) (average recovery between 2% to 3% of maximum damages)); *Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-CV-00419-MMD, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement recovering about 3.5% of the maximum damages that plaintiffs believe could be recovered at trial and noting that the amount is within the median recovery in securities class actions settled in the last few years); *McPhail v. First Command Fin. Plan., Inc.*, No. 05CV179-IEGJMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (settlement recovering 7% of estimated damages was fair and adequate); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162–63 (S.D.N.Y. 2011) ("the average settlement in securities class actions ranges from 3% to 7% of the class' total estimated losses").

According to Cornerstone Research, approximately 36% of securities class actions settled for less than $5 million in 2021, with roughly 1 out of 6 cases settling for less than $2 million.[2] The median recovery in cases such as this one alleging Rule 10b-5 claims with damages under $25 million was approximately 12.5% of estimated

---

[2] Laarni T. Bulan, *et al.*, Securities Class Action Settlements: 2021 Review and Analysis (Cornerstone Research), at 4, 6, and 14 *available* at https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:22-cv-01820-MCS-RAO

damages in 2021, and 18.2% between 2012-2020. *Id.* at 6. Between 2017-2021, securities class actions that settled before motions to dismiss were filed recovered a median of $3 million and 9.8% of estimated damages. *Id.* at 14. The recovery here compares favorably to recoveries in similar securities class action settlements, supporting the requested fee.

### 2. The Risks and Complexity of the Litigation Support the Requested Fee Amount

The risks and complexity of the litigation are important factors in determining a fee award. *See In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (fees justified "because of the complexity of the issues and the risks."); *Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance"); *WPPSS*, 19 F.3d at 1299-1301. Securities class actions are often complex, difficult to prove, and risky. *In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *6 (C.D. Cal. June 10, 2005); *Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSX), 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation, 'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.'") (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *17 (S.D.N.Y. Nov. 8, 2010)); *Johnson v. US Auto Parts Network, Inc.*, No. CV07-2030-GW(JCX), 2008 WL 11343481, at *3 (C.D. Cal. Oct. 9, 2008) ("a number of courts have commented on the difficulty and uncertainty of maintaining a securities class action."). "[T]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).

Plaintiffs faced significant legal and practical risks if litigation were to continue. Plaintiffs' claims were subject to the PSLRA's stringent pleading standards. As a court observed in dismissing securities claims brought against BP following the Deepwater Horizon disaster, "[t]he Court is acutely aware that federal legislation and authoritative

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:22-cv-01820-MCS-RAO

precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading." *In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012). "Legal precedents are continually making it more difficult to plead securities class actions," so courts have awarded higher fees in securities actions. *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016). While Defendants had not yet filed motions to dismiss Plaintiffs' Complaint at the time of the Settlement, Defendants likely would have asserted challenges to falsity, the scienter of the individual Defendants other than Andrew Wiederhorn, and loss causation. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005) (the elements of a Rule 10b-5 claim are falsity, materiality, scienter, reliance, loss causation and damages). Under the PSLRA, the element of scienter is particularly difficult to prove. *In re LJ Int'l, Inc. Sec. Litig.*, No. CV0706076GAFJWJX, 2009 WL 10669955, at *3 (C.D. Cal. Oct. 19, 2009). Plaintiffs also faced significant risks of continued litigation beyond the pleading stage, such as obtaining class certification, conducting lengthy and expensive fact and expert discovery, surviving Defendants' anticipated motion for summary judgment, winning at trial, and defeating any post-trial motions or appeals. *See* Final Approval Brief, Section IV(A).

Moreover, the Settlement is an extremely favorable result because Defendants' insurer has disclaimed coverage entirely. Rosen Decl., ¶29. Insurance policies are typically the main source for funding a judgment or settlement, and Plaintiffs faced the prospect of securing funds from Defendants' own pockets. Continuing to litigate the Action would have depleted the Company's already limited cash reserves and may have resulted in a smaller recovery, or none at all. Moreover, Defendants were facing concurrent liability from other lawsuits including a derivative shareholder action, *Harris v. Junger*, No. 2021-0511-SG (Del. Ch.) ("*Harris* Action"), as well as investigations by the Department of Justice and the SEC. The Company was also burdened with a substantial preexisting debt load, as alleged in the Complaint. Rosen Decl., ¶29. Accordingly, given the practical obstacles presented here, there was a

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:22-cv-01820-MCS-RAO

substantial risk that Plaintiffs and the Settlement Class would not be able to obtain a recovery of this size, or at all, had they continued to litigate.

### 3. Lead Counsel Skillfully Managed This Case Against Formidable Adversaries

The skill required to litigate the case and the quality of work performed support the requested fee award. "The prosecution and management of a complex national class action requires unique legal skills and abilities. This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMX), 2019 WL 5173771, at *10 (C.D. Cal. Oct. 10, 2019); *In re Am. Apparel, Inc. S'holder Litig.*, No. CV1006352MMMJCGX, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) (similar).

The Court-appointed Lead Counsel, The Rosen Law Firm, P.A. ("Rosen Law"), have amassed the skills and experience needed to prosecute this case through their considerable experience litigating and settling similar actions. Rosen Decl. ¶45; Rosen Fee Decl., Exhibit E (Rosen Law firm resume). They have shown they are willing and able to litigate a case to resolution. *See, e.g., Pace v. Quintanilla*, No. SACV 14-2067-DOC, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014) ("The Rosen Law Firm has appeared before this Court several times before, and the Court is confident that it has the necessary skill and knowledge to effectively prosecute this action"); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is "highly qualified [and] experienced" in securities class actions"); *Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) (noting that Rosen Law "took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation that required significant expert involvement" to secure eve-of-trial settlement). Rosen Law applied the same skill, experience, and determination in litigating this Action to a favorable resolution for the Settlement Class. Moreover, Pomerantz LLP, additional

9

Plaintiffs' Counsel, has substantial experience prosecuting securities class actions on behalf of investors. *See* Declaration of Brenda Szydlo on Behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses ("Pomerantz Fee Decl."), Exhibit E.

"[T]he quality of opposing counsel is [also] important in evaluating the quality of Plaintiff's counsel's work." *Heritage Bond*, 2005 WL 1594403, at *20. Here, Defendants retained Sheppard, Mullin, Richter & Hampton LLP and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., two of the world's premier law firms, each with an exemplary securities practice. Defense Counsel are talented and experienced securities practitioners who advocated forcefully for their clients. Rosen Decl. ¶47. That Lead Counsel achieved a favorable Settlement in the face of such formidable opposition weighs in favor of the requested fee.

### 4.      Plaintiffs' Counsel Undertook a Significant Financial Risk

The risk of receiving little or no recovery is a major factor in awarding attorneys' fees. *See WPPSS*, 19 F.3d at 1299; *Heritage Bond*, 2005 WL 1594389, at *14 ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award.").

Contingency fee risk is not illusory. In many cases, plaintiffs' attorneys invest thousands of hours and receive no remuneration whatsoever. There are numerous class actions in which plaintiffs' counsel expended thousands of hours, and yet received no remuneration whatsoever despite their diligence and expertise. Since the PSLRA was enacted, a high percentage of securities cases have been dismissed at the pleading stage. The risks do not end at the motion to dismiss stage. In fact, even when a plaintiff is successful at trial, payment is not guaranteed. *See Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant). For example, in *Sawant v. Ramsey*, No. 3:07-CV-980 VLB, 2012 WL 3265020 (D. Conn. Aug. 9, 2012), Rosen Law spent thousands of hours securing a trial verdict only to find it impossible to collect on the judgment.

10

The risks in this case were no different. Plaintiffs' Counsel's fee was entirely contingent, so the only certainty was that there would be no fee without a successful result and that such a result would only be realized after significant amounts of time, effort and expense had been expended. Plaintiffs' risked non-payment collectively of 563.2 hours of professional time worth $359,885.75, as well as incurring expenses of $48,219.59, for nearly a year to bring this case to a successful conclusion. *See* Rosen Fee Decl. ¶¶4-11; Pomerantz Fee Decl., ¶¶4-11(summarizing Plaintiffs' Counsel's lodestar and expenses in further detail); Rosen Decl. ¶¶41, 56. "This type of 'substantial outlay, when there is a risk that [no money] will be recovered, further supports the award of the requested fees.'" *Am. Apparel*, 2014 WL 10212865, at *22; *see also City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *14 (S.D.N.Y. May 9, 2014) ("the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis").

### 5.   Fee Awards Granted in Similar Cases Further Support an Award of 25% of the Settlement Fund

The Ninth Circuit has established a benchmark for attorneys' fees in common fund cases of 25%, which the Court may adjust upwards or downwards for special circumstances. *Pac. Enterprises*, 47 F.3d at 379 (affirming fee of one-third of settlement fund); *Heritage Bond*, 2005 WL 1594403, at *18 (awarding one-third of settlement amount). Courts in the Ninth Circuit have recognized that "in most common fund cases, the award exceeds the benchmark" and that "this is particularly true in securities class actions." *Am. Apparel*, 2014 WL 10212865, at *23; *Omnivision*, 559 F. Supp. 2d at 1047 ("[I]n most common fund cases, the award exceeds [the] benchmark."); *Romero v. Producers Dairy Foods, Inc.*, No. 1:05CV0484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (approving a fee award of 33% of the common fund, and noting that "[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average

around one-third of the recovery"). Here, Lead Counsel requests an award of attorneys' fees of 25% of the Settlement Amount.

Courts in the Ninth Circuit frequently award fees at or above the 25% benchmark in connection with securities class action settlements under $10 million, like the Settlement here. *E.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming fee award of one-third of $1.725 million settlement); *In re IsoRay, Inc. Sec. Litig.*, No. 4:15-CV-5046-LRS, 2017 WL 11461073, at *1 (E.D. Wash. Mar. 7, 2017) (awarding attorneys' fees of 30% of $3,537,500 settlement); *Szymborski v. Ormat Techs., Inc.*, No. 3:10-CV-132-RCJ, 2012 WL 4960098, at *4 (D. Nev. Oct. 16, 2012) (awarding attorneys' fees of 30% of $3,100,000 settlement); *In re Nuvelo, Inc. Sec. Litig.*, No. C 07-04056 CRB, 2011 WL 2650592, at *2 (N.D. Cal. July 6, 2011) (awarding 30% of $8.9 million); *In re Audioeye, Inc., Sec. Litig.*, No. CV-15-00163-TUC-DCB, 2017 WL 5514690, at *4 (D. Ariz. May 8, 2017) (awarding fees of one-third of $1,525,000 settlement); *Mauss v. NuVasive, Inc.*, No. 13CV2005 JM (JLB), 2018 WL 6421623, at *7 (S.D. Cal. Dec. 6, 2018) (awarding attorneys' fees of 30% of $7.9 million settlement); *Patel v. Axesstel, Inc.*, No. 3:14-CV-1037-CAB-BGS, 2015 WL 6458073, at *8 (S.D. Cal. Oct. 23, 2015) (awarding attorneys' fees of 30% of $1.25 million settlement). Moreover, Courts in this District have approved similar fee requests of 25% of a cash component of a settlement and 25% of a stock component. *See Romero, et al., v. Growlife, Inc., et al.*, Case No. 2:14-cv-03015-CAS-JEM (Dkt. No. 57).

Courts in the Ninth Circuit also routinely award attorneys' fees at or above the benchmark in non-securities, common fund actions. *See e.g., Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (awarding attorneys' fees of one-third of common fund and collecting cases noting that "the request for attorneys' fees in the amount of 33.33% of the common fund falls within the typical range of 20% to 50% awarded in similar cases."); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee);

*Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804, at *12 (C.D. Cal. Nov. 18, 2014) (awarding one-third fee); *Vandervort v. Balboa Cap. Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding 33% fee); *Millan v. Cascade Water Servs., Inc.*, No. 112CV01821AWIEPG, 2016 WL 3077710, at *11–12 (E.D. Cal. May 31, 2016) (approving an award of 33% of the common fund); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) (awarding one-third of the settlement fund); *Rausch v. Hartford Fin. Servs. Grp.*, No. 01-CV-1529-BR, 2007 WL 671334, at *2 (D. Or. Feb. 26, 2007) (awarding 30% of settlement fund); *Gustafson v. Valley Ins. Co.*, No. CV 01-1575-BR, 2004 WL 2260605, at *2 (D. Or. Oct. 6, 2004) (same); *Razilov v. Nationwide Mut. Ins. Co.*, No. 01-CV-1466-BR, 2006 WL 3312024, at *3 (D. Or. Nov. 13, 2006) (same).

The requested benchmark 25% fee is also lower than contingent fees in individual cases, which typically range from 30% to 40% of the recovery. *See, e.g., Blum*, 465 U.S. at 903 n.20 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers."); *Katz v. China Century Dragon Media, Inc.*, No. LACV1102769JAKSSX, 2013 WL 11237202, at *8 (C.D. Cal. Oct. 10, 2013) ("[C]ontingency fee arrangements generally range from 30% to 40% of final recovery.").

The guiding principle in this Circuit is that a fee award be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296. Here, in view of the result obtained, the unique risks avoided in achieving a prompt and substantial recovery, the contingent fee risk, and the fees awarded in similar securities class actions in this Circuit, an award at the benchmark of 25% of the Settlement Amount obtained for the Settlement Class is reasonable. *See* Preliminary Approval Order at 8 ("The record presents no reason to depart from the benchmark in this case.").

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:22-cv-01820-MCS-RAO

### 6.   An Informal Lodestar Crosscheck Confirms the Reasonableness of the Requested Fee Award

"In cases where courts apply the percentage-of-the-fund method to calculate fees, they should use a rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award." *Am. Apparel*, 2014 WL 10212865, at \*20; *Vizcaino*, 290 F.3d at 1050 ("the lodestar may provide a useful perspective on the reasonableness of a given percentage award"). Courts calculate lodestar by assessing attorneys' hourly rates for reasonableness and multiplying the rates by the number of hours reasonably spent, and then cross-checking the resulting number against the fee award. *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 845 (E.D. Va. 2016). "In securities class actions, it is common for a counsel's [lodestar] figure to be adjusted upward by some multiplier reflecting a variety of factors such as the effort expended by counsel, the complexity of the case, and the risks assumed by counsel." *Heritage Bond*, 2005 WL 1594403, at \*22.

When using the lodestar to calculate attorney fee awards, "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). When the lodestar is merely used as a cross-check, "the focus is not on the necessity and reasonableness of every hour of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007). Thus, "an itemized statement of legal services is not necessary for an appropriate lodestar cross-check." *In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2012 WL 1378677, at \*7 n2 (D. Ariz. Apr. 20, 2012).[3] Here, an informal lodestar cross-check on the percentage of the Settlement Amount requested further supports the reasonableness of the requested fee.

---

[3] Pursuant to the Court's Initial Standing Order for Civil Cases, Section 10(d), attached as Exhibits A-C to the Rosen Fee Declaration and the Pomerantz Fee Declaration are summaries, in table form, of the hours worked by and billing rate of each attorney who worked on this matter for more than 10 hours.

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:22-cv-01820-MCS-RAO

"Courts may find hourly rates reasonable based on evidence of other courts approving similar rates or other attorneys engaged in similar litigation charging similar rates." *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010). Rosen Law's hourly rates for attorneys who worked on this case range from up to $925 for partners in 2022, $800 for counsel, and $550-$725 for associates. Rosen Fee Decl., Ex. A. Additional counsel, Pomerantz, for attorneys who worked on this case range up to $900 for partners and between $400 and $475 for associates and project associates. Pomerantz Fee Decl., Ex. A. These rates are consistent with those of other attorneys engaged in similar litigation in this District and comparable jurisdictions. *See, e.g., Hope Med. Enters., Inc. v. Fagrgon Compounding Serv., LLC*, No. 2:19-CV-07748-CAS (PLAx), 2022 WL 826903, at *3 (C.D. Cal. Mar. 14, 2022) (finding "rates of $895 to $1,295 per hour for partners and counsel, and between $565 and $985 for associates" to be reasonable); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving fee award following a lodestar cross-check with "billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals"). Courts in this Circuit have also previously awarded attorneys' fees to Rosen Law based on substantially the same rates. *E.g., Sanders v. The RealReal, Inc.*, No. 5:19-cv-773-EJD (N.D. Cal. July 28, 2022), Dkt. Nos. 71-3 (declaration setting forth hourly rates for Rosen Law attorneys) and 76 (order awarding attorneys' fees).

Here, Plaintiffs' Counsel dedicated 563.2 hours of professional time prosecuting this litigation from its inception. Rosen Fee Decl. ¶8; Pomerantz Fee Decl., ¶8. In addition to the time expended to date, Lead Counsel will spend additional time preparing Plaintiffs' reply in support of final approval, preparing for and attending the final approval hearing, directing the claims administration process, and filing a motion for final distribution, but will not seek further compensation. Rosen Decl. ¶46.

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:22-cv-01820-MCS-RAO

Plaintiffs' Counsel's total lodestar, based on its attorneys' historical and current rates, pursuant to the Court's Standing Order, is $359,885.75. Rosen Decl. ¶41. Rosen Fee Decl. ¶8; Pomerantz Fee Decl., ¶8. An award of 25% of the Settlement Fund, or $625,000 in cash and $125,000 worth of FAT Brands Class A common stock, results in a lodestar multiplier of 1.74 for the cash portion of the attorneys' fees award or 2.08 when the cash award is combined with the stock award. Rosen Decl. ¶44. This is well within the range typically awarded in this Circuit. *E.g., Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) ("this multiplier [of 6.85] falls well within the range of multipliers that courts have allowed"); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016) ("Counsel's lodestar yields a 3.07 multiplier, which is well within the range for reasonable multipliers."); *Feller v. Transamerica Life Ins. Co.*, No. 16CV01378CASGJSX, 2019 WL 6605886, at *13 (C.D. Cal. Feb. 6, 2019) (2.97 multiplier "well-within the range of appropriate multipliers recognized by this Court and by other courts within the Ninth Circuit."); *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."); *Buccellato v. AT & T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (granting 4.3 multiplier). The lodestar crosscheck, therefore, supports Plaintiffs' request for 25% of the Settlement Amount in attorney's fees.

**7.    The Settlement Class's Reaction Supports the Requested Fee**

"The existence or absence of objectors to the requested attorneys' fee is a factor in determining the appropriate fee award." *Heritage Bond*, 2005 WL 1594403, at *21 *see also Omnivision*, 559 F. Supp. 2d at 1048. To date, 54,230 potential Settlement Class Members were notified about the Settlement by mailed Postcard Notices or emailed links to the Long Notice and Claim Form. Bravata Decl., ¶7. The Claims Administrator also published the Summary Notice on *GlobeNewswire* and in *Investor's Business Daily*. *Id*. ¶11. The Postcard Notice and Summary Notice each directed potential Settlement Class Members to where they could access the full-length Notice,

which was also posted on a Settlement-specific website. *Id.* ¶12. The Notice informed Settlement Class Members that Counsel would seek attorneys' fees of up to one-third of the Settlement Amount, plus interest, and litigation expenses in an amount not to exceed $45,000, and that they would seek an Award to Plaintiffs of up to $1,500 each, or $3,000 total. Bravata Decl., Exhibit A (Long Notice) at 2. The Notice also advised Settlement Class Members of their right to object to these requests for relief or to request exclusion from the Settlement, and explained how to do so.

The deadline for potential Settlement Class Members to submit objections and requests for exclusion is February 7, 2023. To date, no Settlement Class Member has objected to the Settlement or to the requested attorneys' fees or reimbursement of expenses. Bravata Decl. ¶15; Rosen Decl. ¶21. The lack of objections demonstrates the positive reaction of the Settlement Class, which strongly supports the fee request. *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) ("The lack of objection from any Class Member supports the attorneys' fees award"). The Claims Administrator has received no valid exclusion requests. Bravata Decl. ¶14; Rosen Decl. ¶¶55. No valid requests for exclusion further demonstrates the positive reaction of the Settlement Class, which supports the requested fee. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("overwhelming positive reaction of the class members" including 16 exclusion request representing 4.86% of class supported approval of the settlement); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) (reaction of class supported settlement when two large traders and small number of other class members representing under 1% of class opted-out of the settlement).

## IV.   PLAINTIFFS' COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

"[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014); *Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters."). The Notice informed potential Settlement Class Members that Lead Counsel would seek expenses in an amount not to exceed $45,000. Bravata Decl., Exhibit A at 2. Although Plaintiffs' Counsel incurred expenses of $48,219.59 prosecuting this Action, Plaintiffs' Counsel requests reimbursement of $45,000 as outlined in the Notice. Rosen Decl. ¶56. These expenses are the types that are routinely charged to fee-paying clients. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *see also Immune Response*, 497 F. Supp. 2d at 1177.

Plaintiffs' Counsel pursued this litigation knowing that it could recover its expenses only if Plaintiffs and the putative Class prevailed at trial and survived on appeal or reached a settlement. Plaintiffs' Counsel had no incentive to incur, and did not incur, unnecessary expenses. All of Plaintiffs' Counsel's expenses were reasonably incurred and necessary for the prosecution of this litigation. Rosen Decl. ¶60; Rosen Fee Decl. ¶10, Ex, 5; Pomerantz Fee Decl., ¶10, Ex. 5. The bulk of Plaintiffs' Counsel's expenses consisted of fees for a financial expert, mediator fees, investigator fees, document hosting fees, and notice to class members. *Id*. The financial expert was needed to analyze potential damages so that Plaintiffs' Counsel could properly evaluate and negotiate the Settlement. The document hosting fees were needed to review over 50,000 documents Defendants provided in confirming the adequacy of the Settlement. The remainder of Plaintiffs' Counsel's expenses consisted primarily of court filing fees, *pro hac vice* fees, online legal research fees, travel fees, and other miscellaneous expenses. *Id*. Courts have held that these and similar types of expenses are properly charged to the Settlement Class. *E.g., Katz*, 2013 WL 11237202, at *8; *Luna v. Marvell*

*Tech. Grp.*, No. C 15-05447 WHA, 2018 WL 1900150, at *4 (N.D. Cal. Apr. 20, 2018) (reimbursement for experts, investigators, travel, filing costs, photocopies, and online legal and factual research granted as they were all reasonable and necessary). The categories of expenses for which Lead Counsel seeks reimbursement are the type routinely billed to hourly clients and, therefore, should be paid out of the common fund.

## V.     THE COURT SHOULD APPROVE THE AWARD TO PLAINTIFFS

The Court should also award Plaintiffs $1,500 each, or $3,000 total, as compensation for the time they spent representing the Settlement Class. The PSLRA empowers courts to grant awards to reimburse plaintiffs for reasonable costs and expenses related to the representation of the class. *See* 15 U.S.C. § 78u-4(a)(4); H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 35 (1995) ("The Conference Committee recognizes that lead plaintiffs should be reimbursed for reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and grants the courts discretion to award fees accordingly."). Such awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-9 (9th Cir. 2009); *Jenson, v. First Tr. Corp.*, No. CV 05-3124 ABC (CTX), 2008 WL 11338161, at *16 (C.D. Cal. June 9, 2008) ("Courts across the country embrace incentive awards in light of the enormous benefits created by the class representatives.").

Throughout this litigation, Plaintiffs were available to Plaintiffs' Counsel as needed and performed their duties with attentiveness and diligence, including by: (1) Matthew filing the initial complaint and volunteering to file a motion seeking appointment as lead plaintiff; (2) reviewing complaints, motion papers and other pleadings; (3) regularly communicating and corresponding with counsel regarding the litigation and settlement; (4) gathering and producing information to Plaintiffs' Counsel concerning their investments in FAT Brands securities; and (5) made

themselves available for a deposition, if needed, and to testify if there were a trial. *See* Rosen Decl. Exhibits 4-5 (Declaration of Robert J. Matthews and Declaration of Michael Melendez). As shown in their respective declarations, Mr. Matthews and Mr. Melendez were both actively involved in the case and put the concerns of the Settlement Class at the forefront. These are the kinds of activities that warrant reimbursement for the time and effort Plaintiffs expended on the Settlement Class's behalf.

The Notice informed Settlement Class Members that Lead Counsel would seek an award for Plaintiffs not to exceed $1,500 each, or $3,000 total. Bravata Decl., Exhibit A at 2. To date, no objections have been raised in response to this request. Bravata Decl. ¶15; Rosen Decl. ¶21.

Courts in this Circuit routinely award representative plaintiffs greater amounts. *See, e.g., Brown v. China Integrated Energy Inc.*, No. CV1102559BROPLAX, 2016 WL 11757878, at *14 (C.D. Cal. July 22, 2016) ($10,000 each to lead plaintiffs); *Jenson,* 2008 WL 11338161, at *16 ($20,000 reimbursement to lead plaintiff); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014) ($10,000 reimbursement to lead plaintiffs); *Razilov v. Nationwide Mut. Ins. Co.*, No. 01-CV-1466-BR, 2006 WL 3312024, at *3 (D. Or. Nov. 13, 2006) ($10,000 award to plaintiff).

Plaintiffs dedicated their own valuable time, faithfully representing the Settlement Class. Here, the requested Award to Plaintiffs is reasonable and thus, the Court should award the requested amount to Plaintiffs.

## VI.    CONCLUSION

For the foregoing reasons, the Court should award: (i) attorneys' fees of 25% of the Settlement Amount together with interest thereon; (ii) reimbursement of expenses of $45,000; and (iii) $1,500 each to Plaintiff.

Dated: January 31, 2023

**THE ROSEN LAW FIRM, P.A.**

*/s/Laurence M. Rosen*
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Phillip Kim (*pro hac vice* pending)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com

Joshua Baker (*pro hac vice*)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
Email: jbaker@rosenlegal.com

*Lead Counsel for Plaintiffs*

**POMERANTZ LLP**
Jeremy Lieberman (*pro hac vice*)
Brenda Szydlo (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (646) 581-9996
Email: jlieberman@pomlaw.com
Email: bszydlo@pomlaw.com

**BRONSTEIN, GERWITZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600

21

New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

*Additional Counsel for Plaintiffs*

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:22-cv-01820-MCS-RAO

**CERTIFICATE OF SERVICE**

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

I am the managing attorney of The Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071. I am over the age of eighteen.

On January 31, 2023, I electronically filed the foregoing MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD TO PLAINTIFFS with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on January 31, 2023.

/s/Laurence M. Rosen

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:22-cv-01820-MCS-RAO