Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br><br>FAT BRANDS INC. SECURITIES LITIGATION | Case No. 2:22-cv-01820-MCS-RAO<br><br>**DECLARATION OF LAURENCE M. ROSEN IN SUPPORT OF PLAINTIFFS' MOTIONS FOR: (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO PLAINTIFFS**<br><br>CLASS ACTION<br><br>Date: February 28, 2023<br>Time: 9:00 a.m.<br>Courtroom: 7C<br>Judge: Hon. Mark C. Scarsi |

DECLARATION OF LAURENCE M. ROSEN; 2:22-cv-01820-MCS-RAO

I, Laurence M. Rosen, declare as follows:

1. I am the Managing Partner of The Rosen Law Firm, P.A. ("Rosen Law"), Court-appointed Lead Counsel in the above-captioned Action. I am an attorney duly licensed to practice law in California and before this Court. I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto.

2. I submit this declaration in support of the Motions by Lead Plaintiff Robert J. Matthews ("Matthews") and named plaintiff Michael Melendez ("Melendez" and with Matthews, "Plaintiffs") for: (1) final approval of the proposed Settlement of this Action; and (2) an award of attorneys' fees, reimbursement of expenses, and Award to Plaintiffs, filed concurrently herewith.[1] This declaration demonstrates why the Settlement is fair, reasonable, and adequate and should be approved by the Court, and why the requests for attorneys' fees, reimbursement of expenses, and Award to Plaintiffs are reasonable and should be approved by the Court.

3. The Settlement is $3,000,000, plus accrued interest. The Settlement's consideration is comprised of $2,500,000 in cash and $500,000 in FAT Brands Inc. ("FAT Brands") Class A Common Stock. Stipulation ¶1.34. After attorneys' fees, reimbursement of expenses, Award to Plaintiffs, and claims administration costs, the remaining funds ("Net Settlement Fund") will be distributed to a Settlement Class consisting of all persons other than Defendants who purchased publicly traded FAT securities between December 4, 2017 and February 18, 2022, both dates inclusive, and who were damaged thereby.[2]

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings set forth in the Stipulation of Settlement, filed on September 23, 2022 ("Settlement" or "Stipulation") (Dkt. No. 56).

[2] Excluded from the Settlement Class are: Defendants; the present and former officers, directors, and affiliates of FAT Brands at all relevant times; FAT Brands' employee retirement or benefit plan(s) and their participants or beneficiaries to the extent they purchased or acquired FAT Brands securities through any such plan(s); immediate

4. The memorandum in support of Plaintiffs' motion for final approval of the Settlement ("Final Approval Brief"), filed herewith, sets out a full narrative of this case. The purpose of this declaration is to attest to certain facts set out in those briefs that cannot be supported by citation to the docket or other public documents.

## I. RELEVANT BACKGROUND AND PROCEDURAL HISTORY

5. On March 18, 2022, Matthews filed the action *Matthews v. FAT Brands, Inc., et al.*, Case No. 2:22-cv-01820 (C.D. Cal.), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Dkt. No. 1. On April 15, 2022, Kerry Chipman filed a related action style as *Chipman v. FAT Brands, Inc., et al.*, 2:22-cv-02541 (C.D. Cal.), alleging the same claims. On May 2, 2022, the Court consolidated the two actions and restyled the lead action as *In re FAT Brands, Inc. Securities Litigation,* Case No. 2:22-cv-01820. Dkt. No. 19.

6. On May 17, 2022, Matthews filed a motion seeking to be appointed Lead Plaintiff and for his counsel, Rosen Law to be appointed Lead Counsel. Dkt. No. 20. On June 13, 2022, the Court appointed Matthews as Lead Plaintiff and Rosen Law as Lead Counsel. Dkt. No. 34.

7. On June 27, 2022, Plaintiffs Matthews and Melendez filed the operative Consolidated Amended Complaint for Violations of the Federal Securities Laws ("Complaint"). Dkt. No. 36.

8. On July 19, 2022, the Parties stipulated and requested that the Court stay the action pending a mediation scheduled for August 9, 2022. Dkt. No. 48. The Court denied this request but extended certain pleading and motion deadlines in light of the mediation. Dkt. No. 49.

---

family members, legal representatives, heirs, successors or assigns of any excluded person or entity; and any entity affiliated with any excluded person or in which any excluded person or entity has a controlling interest. Also excluded from the Settlement Class are those persons or entities who do not have compensatory losses and those who file valid and timely requests for exclusion in accordance with the Preliminary Approval Order. Stipulation ¶1.35.

9. On August 10, 2022, the Parties filed a joint stipulation notifying the Court that they had reached a settlement in principle and requesting that the Court stay the action so that the Parties could document the settlement. Dkt. No. 50. The Court granted this request on August 12, 2022. Dkt. No. 51.

10. On August 31, 2022, the Parties filed a joint stipulation requesting a two-week extension of the stay to permit additional time to complete informal, confirmatory discovery, and document the settlement. Dkt. No. 52. The Court granted this request on September 2, 2022, extending the deadline for Plaintiffs to move for preliminary approval of the Settlement to September 23, 2022. Dkt. No. 53.

11. On September 23, 2022, Plaintiffs moved for preliminary approval of the Settlement. Dkt. No. 54.

12. On November 8, 2022, the Court entered the Order RE: Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"). Dkt. No. 61.

13. Pursuant to the Preliminary Approval Order at 8, on November 9, 2022, Lead Counsel submitted the Supplemental Agreement for *in camera* review.

## II. OVERVIEW OF THE SETTLEMENT NEGOTIATIONS

14. The Parties began to discuss mediation shortly after Plaintiffs filed the Complaint, and they engaged Michelle Yoshida of Phillips ADR Enterprises as mediator. Ms. Yoshida is a highly respected and experienced mediator and has overseen negotiations in numerous securities class action lawsuits.

15. On July 29, 2022, the Parties exchanged detailed mediation statements. On August 4, 2022, the Parties exchanged replies.

16. On August 9, 2022, the Parties attended an in-person mediation with Ms. Yoshida. The mediation was successful and the Parties reached a settlement in principle. The following day, the Parties executed a binding settlement term sheet that set forth the material terms and obligations with respect to the settlement, subject to the completion of informal discovery to confirm the adequacy of the Settlement.

17. In the opinion of the team of lawyers at my firm who worked on this case, the Settlement is a fair, reasonable, and adequate result for the Settlement Class. The Settlement confers a benefit on the Settlement Class, eliminating the risk of continued litigation under circumstances where a more favorable outcome is less likely. Additionally, the Plan of Allocation is a fair and reasonable method for distributing the proceeds of the Settlement to Settlement Class Members. The Court should approve both the Settlement and the Plan of Allocation.

18. As set forth herein and in the Final Approval Brief, the Settlement represents approximately 31% of the maximum estimated damages of $9.7 million under Plaintiffs' best-case scenario, as estimated by Plaintiffs' damages expert. This maximum estimated amount could only be recovered if: all the claims alleged survive to trial; a class is certified; a jury adopts Plaintiffs' expert's damages model; Plaintiffs defeat any appeals; and Defendants have the ability to pay such a judgment.

19. A lump sum settlement in the face of these challenges is a favorable outcome for the Settlement Class. In light of these circumstances, and especially when the Settlement is the product of comprehensive legal and factual investigation and arm's-length negotiations between experienced counsel and overseen by a well-respected mediator, there is ample support for a finding that the Settlement is fair, reasonable, and adequate.

20. For litigating this case on a contingency basis and negotiating this settlement, Lead Counsel requests a fee of 25% of the Settlement Amount comprised of 25% of the cash component of the Settlement, or $625,000, and 25% of the stock component of the Settlement, or $125,000 worth of FAT Brands Class A Common Stock, and reimbursement of litigation expenses. This fee request is within the range of percentages typically awarded to class counsel in securities class actions in the Ninth Circuit.

21. The favorable reaction of the members of the Settlement Class also supports the reasonableness of the Settlement and the fee request. Pursuant to the

5
DECLARATION OF LAURENCE M. ROSEN; 2:22-cv-01820-MCS-RAO

Notice,[3] objections to the Settlement must be received by February 7, 2023. To date, there have been no objections to the Settlement. *See* Declaration of Josephine Bravata Concerning: (A) Mailing of The Postcard Notice; (B) Publication of The Summary Notice; and (C) Report on Requests For Exclusion and Objections ("Bravata Declaration" or "Bravata Decl.") ¶15. A true and correct copy of the Bravata Declaration is attached hereto as **Exhibit 1**. If Rosen Law or the Claims Administrator, Strategic Claims Services ("SCS"), receives any objections, Plaintiffs will address them in their reply papers in support of final approval.

22. Pursuant to the Notice, requests for exclusion from the Settlement must be received by February 7, 2023. The Claims Administrator received no valid requests for exclusion. Bravata Decl. ¶14.

### III. NOTICE PROCEDURES

23. At Lead Counsel's direction, and pursuant to the Preliminary Approval Order, on December 12, 2022, the Claims Administrator published the Summary Notice electronically on *GlobeNewswire* and in print in *Investor's Business Daily*. Bravata Decl. ¶11. The Claims Administrator also posted the Long Notice, Proof of Claim and Release Form ("Claim Form"), Stipulation, and Preliminary Approval Order on SCS's Settlement-specific website on November 15, 2022. *Id.* ¶13.

24. To date, 54,230 potential Settlement Class Members were notified of the Settlement by mailed Postcard Notice or by emailed link to the Settlement website with the Long Notice and Claim Form. *Id.* ¶8. In total, 31,909 Postcard Notices were mailed to potential Settlement Class Members. *Id.* ¶6. Of that, SCS mailed 94 Postcard Notices to those identified from FAT Brand's transfer agent's list and another 31,815 Postcard Notices were mailed by SCS or nominees. *Id.* ¶10. Additionally, SCS emailed one link to the Long Notice and Claim Form upon the request of a nominee. Another nominee

---

[3] "Notice" collectively refers to the Postcard Notice, Notice of Pendency and Proposed Settlement of Class Action ("Long Notice"), and the Summary Notice of Pendency and Proposed Class Action Settlement ("Summary Notice").

notified SCS that it emailed 22,320 of the clients links to the Long Notice and Claim Form. ¶7.

## IV. PLAN OF ALLOCATION

25. Pursuant to the Preliminary Approval Order, the Long Notice fully described the proposed Plan of Allocation. Bravata Decl., Ex. A (Long Notice) at 5-10. Lead Counsel created the proposed Plan of Allocation after consulting with Plaintiffs' expert and the Claims Administrator, designing it to reimburse Settlement Class Members in a fair and reasonable manner. The Plan of Allocation is based in part on the same damages report Plaintiffs used to estimate their maximum recoverable damages, and it closely tracks Plaintiffs' theory of the case.

26. If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Settlement Class Members who timely submit appropriate Claim Forms. Pursuant to the Plan of Allocation, the Claims Administrator, under the direction of Lead Counsel, will determine each authorized claimant's *pro rata* share of the Net Settlement Fund based upon each claimant's Recognized Loss. Each similarly situated authorized claimant will receive a *pro rata* share of the Recognized Losses attributed to their claim, with that share to be determined by the ratio that the authorized claimant's allowed claim bears to the total allowed claims of all authorized claimants.

27. The Plan of Allocation is tailored to compensate the losses of the Settlement Class Members equitably and is based upon time periods during the Class Period when various corrective disclosures occurred, consistent with loss causation principles of *Dura Pharma. Inc., v. Broudo*, 544 U.S. 336 (2005).

## IV. THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT

28. The proposed Settlement is the culmination of careful and efficient litigation followed by protracted arms' length settlement negotiations. The Parties reached the Settlement after Lead Counsel had thoroughly investigated the claims and consulted with a damages expert. The investigation consisted of an independent review

of public documents and statements regarding and from FAT Brands, retention of an investigator who interviewed former FAT Brands employees and third parties, as well as reviewing the pleadings in *Harris v. Junger*, No. 2021-0511-SG (Del. Ch.) ("*Harris* Action"), a case with substantial factual overlap with this Action, in which an amended complaint was filed after a review of documents from shareholders' books and records request, which survived a motion to dismiss.

29.     Lead Counsel, who are experienced securities class action attorneys, evaluated the prospects of obtaining a better result if the case were to go forward, taking into account the risks of this case surviving on the pleadings, at summary judgment, at the class certification stage, and at trial. Particularly in this case, the fact that Defendants' insurer had disclaimed coverage entirely, and other factors related to collectability of any settlement or judgment, factored into the decision to enter the Settlement. Insurance policies are typically the main source for funding a judgment or settlement, and Plaintiffs faced the prospect of securing funds from Defendants' own pockets. Continuing to litigate the Action would have depleted the Company's already limited cash reserves and may have resulted in a smaller recovery, or none at all. Moreover, Defendants were facing concurrent liability from other lawsuits including the *Harris* Action, as well as concurrent criminal and civil investigations by the Department of Justice and the Securities Exchange Commission. The Company was also burdened with a substantial debt load, which increased the chances that the Company would file for bankruptcy. Plaintiffs and Lead Counsel carefully considered each of these risks before agreeing to the Settlement. Given the significant risks and the inability of Defendants to pay more than $2,500,000 in cash, Plaintiffs carefully considered the stock component of the Settlement. The $500,000 of FAT Brands Class A common stock is substantial consideration for Settlement Class Members. Courts in this District has approved similarly structured settlements. *See Romero, et al., v. Growlife, Inc., et al.*, Case No. 2:14-cv-03015-CAS-JEM (Dkt. No. 56).

30. Although Lead Counsel believes Plaintiffs' claims are meritorious and sufficiently pleaded, there is no certainty that Plaintiffs would defeat Defendants' anticipated motions to dismiss. Defendants would likely challenge whether Plaintiffs had adequately alleged the elements of falsity, scienter, and loss causation.

31. Plaintiffs faced the risk that the Court may have found that Defendants' statements were not actionably false or misleading. Plaintiffs also faced the risk that the Court would find they had not adequately pleaded a strong inference of scienter with sufficient with respect to the individual Defendants other than Andrew Wiederhorn, as required by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The Court could also have found that Plaintiffs' motive and opportunity allegations were insufficient to show scienter as to the non-Wiederhorn Defendants. Plaintiffs also faced the risk that the Court would find their theory of loss causation was unavailing, as it was based on the disclosure of governmental investigations and some of the alleged facts were already in the public domain to varying extents.

32. Plaintiffs also faced the challenge of obtaining class certification and establishing market efficiency for each of the four types of publicly traded FAT Brands securities, some of which were thinly traded. Achieving class certification would have involved a "battle of the experts" and was fraught with uncertainty and risk, as Plaintiffs could not be assured that the fact finder would credit the testimony of Plaintiffs' expert over Defendants' expert. Based on Lead Counsel's experience, a market efficiency expert would likely cost between $70,000 and $100,000. If the Court did not certify the class, it is unlikely that any individual investor or group of investors would have filed individual claims to recover their damages from purchasing FAT Brands securities as it would be uneconomical for them to bring individual cases.

33. Plaintiffs also faced the risk of establishing the proper amount of damages. Estimating aggregate damages can be challenging due to, among other things, assumptions that must be made regarding trading activity. Plaintiffs calculated that damages were $9.7 million, assuming they prevailed on all of their claims. Based on

Lead Counsel's experience, retaining an expert to opine and testify as to loss causation and damages would cost at least several hundred thousand dollars.

34. Discovery would also be costly, complex, and time consuming. Plaintiffs would likely need to review thousands of documents and take several depositions of Defendants, FAT Brands employees, and third parties. Further, since the Class Period began in 2017 and depositions would not start until at least well into 2023, it is possible that evidence could be lost because as time passes memories fade and it would be a challenge to obtain usable deposition or in-person testimony. Plaintiffs would potentially appreciate some benefit in following the discovery undertaken (but not completed) in the *Harris* Action, or from further disclosures concerning the governmental investigations, but additional discovery tailored to this Action would be necessary given the different claims and relevant time periods. Plaintiffs would also face additional obstacles in discovery as the concurrent criminal investigation may hinder the availability of evidence or key witnesses, including Andrew Wiederhorn, FAT Brands' CEO and the center of the alleged fraud.

35. Even if Plaintiffs succeeded in getting discovery and obtaining a favorable judgment at trial, Plaintiffs would still have to enforce the judgment and defeat any applicable appeals.

## V. THE FEE APPLICATION IS FAIR AND REASONABLE

36. The Notice informed Settlement Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed one-third of the Settlement Fund, plus interest, and for reimbursement of counsel's litigation expenses in an amount not to exceed $45,000. Bravata Decl., Exs. A, C, and D. In light of the Court's guidance in the Preliminary Approval Order ("The record presents no reason to depart from the [Ninth's Circuit's 25%] benchmark in this case"), Dkt. No. 61 at 8, Lead Counsel, on behalf of Plaintiffs' Counsel, is requesting only 25% of the Settlement Amount, plus interest, as attorneys' fees, broken down as 25% of the cash component and 25% of the stock component of the Settlement. As set forth in the

memorandum in support of Plaintiffs' motion for an award of attorneys' fees, reimbursement of expenses, and Award to Plaintiffs, filed herewith ("Fee Brief"), Lead Counsel's application for 25% of the common fund that counsel's efforts created falls in line with similar awards that courts in this circuit have granted, and is merited here.

37. Plaintiffs' Counsel achieved a highly favorable result for the Settlement Class at risk and expense to themselves. Throughout this litigation, Plaintiffs' Counsel was committed to the interests of the Settlement Class and invested the time and resources necessary to resolve the Settlement Class's claims. As a result of this Settlement, Settlement Class Members will receive compensation for their losses and avoid the risk of no recovery at all.

***Plaintiffs' Counsel's Work and Expertise***

38. Plaintiffs' Counsel took this case on a contingency basis, with no assurance of success or receiving any compensation.

39. During the PSLRA-mandated discovery stay, Plaintiffs' Counsel reviewed FAT Brands' public filings and statements during the alleged Settlement Class Period, as well as other news reports and public information relating to FAT Brands. Plaintiffs' Counsel also thoroughly reviewed pleadings in the *Harris* Action, including an amended complaint filed after a review of documents from shareholders' books and records request, which survived a motion to dismiss. Plaintiffs' Counsel also retained an investigator to interview former FAT Brands employees and third parties. Through its investigation, Plaintiffs' Counsel determined the scope and strength of the claims Plaintiffs could bring, including the appropriate Class Period, corrective disclosures, and the corresponding misrepresentations and/or omissions. Ultimately, Plaintiffs' Counsel ably synthesized these facts into a compelling presentation during settlement negotiations at and after the mediation.

40. Although the Complaint had not yet been tested, Plaintiffs' Counsel reviewed Defendants' mediation statement and researched the applicable law with regards to Plaintiffs' claims. As a result of these efforts, Plaintiffs and Plaintiffs'

11

Counsel thoroughly understood the claims, merits, and weaknesses of the Action when they decided to enter the proposed Settlement.

41. The total amount of time expended by attorneys and professional staff employed by Plaintiffs' Counsel is 563.2 hours with a combined lodestar of $359,885.75. This number is derived from the time records Lead Counsel, Rosen Law, and additional counsel, Pomerantz LLP ("Pomerantz") regularly maintained. A listing of the professionals at Rosen Law who worked on this matter, the number of hours spent by each such professional, and their hourly rates is set forth in detail in the Declaration of Laurence M. Rosen Concerning Attorneys' Fees and Expenses ("Rosen Fee Declaration") ¶8. A true and correct copy of the Rosen Fee Declaration is attached hereto as **Exhibit 2**. Attorneys at Rosen Law expended 374.3 hours on the litigation. The total value of the services performed in this case by Rosen Law, based upon our historical and current rates, is $255,678.75. *Id*.

42. A listing of the professionals at Pomerantz who worked on this matter, the number of hours spent by each such professional, and their hourly rates is set forth in detail in the Declaration of Brenda Szydlo on Behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses ("Pomerantz Fee Declaration") ¶8. A true and correct copy of the Pomerantz Fee Declaration is attached hereto as **Exhibit 3**. Attorneys at Pomerantz expended 188.90 hours on the litigation. The total value of the services performed in this case by Pomerantz, based upon its historical and current rates, is $104,207.00. *Id*.

43. Attached as Exhibits B and C to the Rosen Fee Declaration as well as Exhibits B and C to the Pomerantz Fee Declaration are two charts summarizing the work Plaintiffs' Counsel performed in the Action, in the format requested in the Court's Initial Standing Order for Civil Cases ("Standing Order") ¶ 10(d) and Exhibit B of the Standing Order. Specifically, Exhibits B to the Rosen Fee Declaration and Pomerantz Fee Declaration are charts setting forth each of the major tasks undertaken by Plaintiffs' Counsel in the Action, and a breakdown, for each task, of the hours spent by each

attorney or other professional who worked on that task, their hourly rates in effect when the work was performed, and their historic-rate lodestar for work on that task, with subtotals for each task. Exhibits C to the Rosen Fee Declaration and Pomerantz Fee Declaration sets forth a list of all attorneys and other paraprofessionals who worked on this Action, with their rates, total hours, and lodestar, and a breakdown of how much time they devoted to each of the major litigation tasks. Plaintiffs' Counsel will also provide these charts to the Court in Excel format pursuant to the Court's Standing Order.

44. If Plaintiffs' Counsel's request of 25% of the Settlement Amount as attorneys' fees is granted, Plaintiffs' Counsel would receive a fee of about $750,000 comprised of 25% of the $2.5 million cash component ($625,000) and 25% of the $500,000 stock component (or about $125,00). This fee award would represent a lodestar multiplier of approximately 1.74 for the cash portion of the attorneys' fees or a lodestar multiplier of 2.08 when the cash award is combined with the stock award. This multiplier is well within the range of multipliers that courts in this Circuit have typically awarded in securities class actions.

45. As reflected in the firms' resumes, Plaintiffs' Counsel are experienced and skilled practitioners in the securities litigation field and have a successful track record in such securities, shareholder and other complex class action cases. Rosen Law's Firm Resume is attached to the Rosen Fee Declaration as Exhibit E. Pomerantz's Resume is attached to the Pomerantz Fee Declaration as Exhibit E.

46. Moreover, in addition to the time expended to date, Lead Counsel will expend additional time preparing Plaintiffs' reply in support of final approval, preparing for and attending the final approval hearing, directing the claims administration process, and filing a motion for final distribution, and will not seek additional compensation for this work.

*The Caliber of Opposing Counsel*

47. Defendants' Counsel, Sheppard, Mullin, Richter & Hampton LLP ("Sheppard Mullin") and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. ("Mintz Levin"), vigorously represented their clients. Sheppard Mullin and Mintz Levin are highly respected defense firms with substantial securities litigation experience and resources. In the face of this opposition, Plaintiffs and Plaintiffs' Counsel were nevertheless able to develop a case that was sufficiently strong to persuade Defendants to settle on terms that were favorable to the Class.

*The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High Risk, Contingent Securities Cases*

48. Plaintiffs' Counsel undertook this class action on a contingency fee basis. I summarize above and Plaintiffs further describes in the Final Approval Brief the risks counsel assumed in bringing these claims to a successful conclusion.

49. Those risks are also relevant to an award of attorneys' fees. I describe in detail above and Plaintiffs further describes in the Fee Approval Brief the risks Plaintiffs' Counsel assumed and the time and expenses it incurred without any payment.

50. From the outset, Plaintiffs' Counsel understood that they were embarking on a relatively complex, expensive, and probably lengthy litigation with no guarantee of being compensated for the investment of their time and money that the case would have required. Plaintiffs' Counsel has received no compensation during the course of this litigation, pending since March 2022.

51. The commencement of a class action does not guarantee a settlement. To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint and to take a case to trial. Only as a result of such efforts will sophisticated defendants engage in serious settlement negotiations at meaningful levels.

52. As a result of persistent efforts in the face of substantial risks and uncertainties, Plaintiffs' Counsel achieved a fair, adequate, and reasonable recovery for the Settlement Class. In consideration of Plaintiffs' Counsels' efforts and the favorable result achieved, I believe that a 25% fee is reasonable and that the Court should approve this request.

*The Reaction of the Class to the Requested Fee*

53. As noted above, 54,230 potential Settlement Class Members received notice of the Settlement. Bravata Decl. ¶8.

54. The deadline for objections is February 7, 2023. To date, neither Lead Counsel nor the Claims Administrator has received any objections to any aspect of the Settlement, including the requested attorneys' fees. Bravata Decl. ¶15.

55. The deadline to request exclusion from the Settlement is February 7, 2023. As discussed above, SCS received no valid request for exclusion. *Id*. ¶14. SCS received one request for exclusion, however, it did not follow the directions outlined in the Long Notice, including failing to include any transaction information regarding FAT Brands. *Id*. ¶, Ex. E. SCS followed up with this individual by letter and telephone. On the phone, the investor said he would be contacting his broker. *Id*. ¶14. As of today's date, however, he has not submitted a valid request for inclusion. *Id*. SCS also received an inquiry from an individual seeking information on how to exclude himself. *Id*. SCS responded in writing, pointing him to the language in the Long Notice. Again, SCS has not heard further from this individual and he as not submitted a request for exclusion. *Id*.

**VI. REIMBURSEMENT OF EXPENSES IS FAIR AND REASONABLE**

56. Plaintiffs' Counsel have incurred $48,219.59 in litigation expenses in connection with the prosecution of the Action. Of this, $39,591.55 was incurred by Lead Counsel (Exhibit 2, Rosen Fee Decl., ¶10, Exhibit D) and $8,638.04 was incurred by Pomerantz. (Exhibit 3, Pomerantz Fee Decl., ¶10, Exhibit D). These expenses were reasonable and necessary for the prosecution of the Action. As the Notice informed

Settlement Class Members that expenses would be no more than $45,000, Plaintiffs' Counsel is seeking $45,000 in expenses.

57. From the outset, Plaintiffs' Counsel were aware that they might not recover any of their expenses, and, at the very least, would not recover anything until the case was successfully resolved. Plaintiffs' Counsel also understood that, even assuming that the case was ultimately successful, reimbursement for expenses would not compensate them for the lost use of the funds they advanced to prosecute this action. Thus, Plaintiffs' Counsel took significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the case.

58. A listing of the expenses Rosen Law incurred, compiled from the firm's regularly maintained records, are set forth in the Rosen Fee Declaration, Exhibit E. The expenses incurred pertaining to this case are reflected in Rosen Law's books and records which are prepared from expense vouchers and check records and are an accurate record of the expenses incurred. They are also available, upon request, for inspection by the Court. *Id.* ¶8. A listing of the expenses Pomerantz incurred, compiled from the firm's regularly maintained records, are set forth in the Pomerantz Fee Declaration, Exhibit E. The expenses incurred pertaining to this case are reflected in Pomerantz's books and records which are prepared from expense vouchers and check records and are an accurate record of the expenses incurred. They are also available, upon request, for inspection by the Court. *Id*

59. Litigation expenses for which Plaintiffs' Counsel seeks reimbursement included expert consultant fees, travel expenses, legal research fees, document retrieval fees, mediation fees, and filing fees. Each of these expenses was reasonable and necessary for the successful prosecution of this case. The financial expert performed a damages analysis so that Plaintiffs' Counsel could properly evaluate and negotiate the Settlement. The document hosting fees were required for Plaintiffs' Counsel to efficiently review over 50,000 pages of documents produced by Defendants in informal discovery to confirm the adequacy of the Settlement.

60. In light of the relatively complex nature of securities class action litigation and the difficulties in pleading and ultimately proving liability, as well as proving loss causation and damages at trial, the litigation expenses incurred were reasonable and necessary to pursue the interests of the Settlement Class.

**VII. A NOMINAL AWARD TO PLAINTIFFS IS WARRANTED**

61. Plaintiffs seek an award of $1,500 each for their time and effort overseeing this action pursuant to the PSLRA. The Declarations of Robert J. Matthews and Michael Melendez, attached hereto as **Exhibits 4 and 5**, respectively, details the work Plaintiffs completed on behalf of the Settlement Class including filing the initial complaint, filing a lead plaintiff motion, reviewing the pleadings, communicating regularly with counsel, and discussing the Settlement with counsel. Plaintiffs have been actively involved in this litigation and put the concerns of the Settlement Class at the forefront.

62. As explained in the Fee Brief, awards of similar magnitude are commonly awarded to lead plaintiffs in securities class actions. They are necessary to ensure that these plaintiffs are not made worse off for their service to the class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 31, 2023.

/s/*Laurence M. Rosen*

## CERTIFICATE OF SERVICE

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

I am the managing attorney of The Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071. I am over the age of eighteen.

On January 31, 2023, I electronically filed the foregoing DECLARATION OF LAURENCE M. ROSEN IN SUPPORT OF PLAINTIFFS' MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO PLAINTIFFS with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on January 31, 2023.

/s/Laurence M. Rosen